## COLTON *v.* COLTON.

## COLTON *v.* COLTON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Nos. 228, 229.  Argued April 13, 16, 1888. — Decided April 30, 1888.

The intention of a testator, as expressed in his will, is to prevail when not inconsistent with rules of law.

No technical language is necessary for the creation of a trust in a will, and no general rule can be formulated for determining whether a devise or bequest carries with it the whole beneficial interest, or whether it is to be construed as creating a trust.

If a trust be sufficiently expressed and capable of enforcement, it is not invalidated by being called " precatory."

When property is given by will absolutely and without restriction, a trust is not to be lightly imposed, upon mere words of recommendation and confidence; but if the objects of the supposed trust are definite and the property clearly pointed out, if the relations between the testator and the supposed beneficiary are such as to indicate a motive on the part of the one to provide for the other, and if the precatory clause, expressing a wish, entreaty, or recommendation that the donee shall apply the prop-

erty to the benefit of the supposed *cestui que trust* warrants the inference that it is peremptory, then it may be held that an obligatory trust is created, which may be enforced in a court of equity.

C, a citizen of California, died there, leaving a will which contained the following provisions: "I give and bequeath to my said wife E. M. C. all of the estate, real and personal, of which I shall die seized, possessed, or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best. . . . I hereby appoint my said wife to be the executrix of this my last will and testament, and desire that no bonds be required of her for the performance of any of her duties as such executrix." This will was duly proved in the probate court of San Francisco. The widow having failed to make suitable provision for the mother and sister, each filed a bill in equity against her, setting up that the provision in their favor in the will was a trust. The bills alleged that the property received by the widow under the will amounted to $1,000,000; that the sister was dependent upon the mother for support; that the mother was in feeble health and required constant care, and was without means of support except the sum of $15,000 loaned at interest, which loan was well known to the testator when he made his will and at the time of his death; that no suitable provision had been made for either mother or sister by the widow, but that they had been left in "very straitened circumstances." The remedy sought in each bill was that the widow should be required to make a suitable provision for the complainant. To each bill a demurrer was filed on the ground that the will created no trust; that the court had no jurisdiction; that the claim was stale, having accrued more than four years before the commencement of the suit; and that the matter had been adjudicated by the probate court of San Francisco in the probate of the will. *Held,*

(1) That the claim being against the defendant as devisee and legatee, and not as executrix, and there being no allegation in the pleadings that any jurisdiction was exercised by the probate court in the construction of the will in this respect, the adjudications in that court were no bar to the prosecution of this suit;

(2) That the complainants took under the will a beneficial interest in the estate given to the wife to the extent of a permanent provision for them during their respective lives, suitable and sufficient for their care and protection, having regard to their condition and necessities, and the amount and value of the fund from which it must come;

(3) That it was the duty of the court to ascertain, determine, and declare what provision would be suitable and best under the circumstances, and all particulars and details for securing and paying it.

THESE were two bills in equity, one filed by Martha Colton, and the other by Abigail R. Colton, each of whom was a citi-

zen of the State of New York, against Ellen M. Colton, a citizen of California.

Martha Colton alleged in her bill that she was a sister of David D. Colton, who died in San Francisco, California, on October 9, 1878, and that the defendant, Ellen M. Colton, was his widow; that on October 8, 1878, the said David D. Colton made and executed in due form his last will and testament, a copy of which was made a part of the bill, and was set out as follows:

"I, David D. Colton, of San Francisco, make this my last will and testament. I declare that all of the estate of which I shall die possessed is community property and was acquired since my marriage with my wife. I give and bequeath to my said wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized or possessed or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best. I also request my dear wife to make such provision for my daughter Helen, wife of Crittenden Thornton, and Carrie, as she may in her love for them choose to exercise. I hereby appoint my said wife to be the executrix of this my last will and testament, and desire that no bonds be required of her for the performance of any of her duties as such executrix. I authorize and empower her to sell, dispose of, and convey any and all of the estate of which I shall die seized and possessed, without obtaining the order of the probate court, or of any court, and upon such terms and in such manner, with or without notice, as to her shall seem best. If my said wife shall desire the assistance of any one in the settlement of my estate, I hereby appoint my friend, S. M. Wilson, of San Francisco, and my secretary, Charles E. Green, to be joined with her in the said executorship, and authorize her to call in either or both of the said gentlemen to be her co-executors; and in case she shall so unite either or both of them with her, the same provisions are hereby made applicable to them as I have before made for her in reference to bonds and duties and powers."

The bill further alleged that on or about October 29, 1878,

"the defendant duly filed the said last will and testament of the said David D. Colton in the then probate court in and for the city and county of San Francisco, State of California, and thereafter such proceedings were duly had in said probate court that on or about the 11th day of November, A.D. 1878, an order of said probate court was duly made and entered appointing the defendant executrix of said will and testament, and thereupon the defendant duly qualified as such executrix, and letters testamentary upon the said last will and testament were duly granted and issued to her, the said defendant, and the said defendant thereupon entered upon and thereafter continued to discharge the duties as such executrix until about the 18th day of December, A.D. 1879, when, by an order or decree of said probate court, then and there duly made and entered, the whole estate, real and personal, of the said David D. Colton then remaining was distributed to the said defendant, and she was discharged from any further duties as such executrix."

The bill then alleged that the estate of David D. Colton thus distributed to the defendant was of the value of about $1,000,000, and that the defendant, though often demanded, has failed, neglected, and refused to make to the plaintiff any gift or provision whatever from the estate of said David D. Colton.

The bill also contained the following allegations:

" Your oratrix further shows that she has no estate, property, or income; that for many years she has been, and still is, dependent upon her mother, the said Abigail R. Colton, for her support and maintenance; that ever since your oratrix was a young child her said mother has been in feeble health, and has always required your oratrix' aid and services, and especially during the lengthened illness and last sickness of your oratrix' said father, and ever since the death of your oratrix' said father as aforesaid, her said mother has been an invalid, and has endured much sickness and suffering, and has required much medical attendance, and the almost constant nursing and care of your oratrix.

" And your oratrix further shows that about December,

1869, your oratrix' said father, Isaac W. Colton, then residing in the city of New York, at the request of your oratrix' brother, the said David D. Colton, then residing in San Francisco aforesaid, converted all of his property, consisting of what was then known as five-twenty bonds of the government of the United States, as was well known to the said David D., in gold, amounting to the sum of fifteen thousand dollars, and loaned the same to the said David D.; and thereupon your oratrix' father received therefor the promissory note of the said David D. Colton, dated at San Francisco aforesaid, on or about December 7th, 1869, for the said sum of $15,000, payable in gold, with interest; that afterwards, on or about March 1st, 1873, the said David D. Colton renewed his said note by giving his new note to his father, the said Isaac W. Colton, for the same amount and payable in the same manner, and which said new note was owned and held by your oratrix' said father at the time of his death.

"And your oratrix further shows that her said father died intestate, and that after his death, and on or about March 1st, A.D. 1877, the said David D. Colton, with the consent of your oratrix, took up said last mentioned note by giving his new note therefor, payable to his and your oratrix' mother, the said Abigail R. Colton, for the said sum of fifteen thousand dollars, with interest, and thereby your oratrix surrendered and relinquished all her legal share and interest in the said note so held by her father at the time of his death, as aforesaid, as your oratrix' brother, the said David D. Colton, well knew."

The prayer of the bill is that the "defendant may be compelled to execute the terms and directions of the said last will and testament of the said David D. Colton, and to make your oratrix a suitable provision from the said estate of the said David D. Colton in such amount and in such manner as to your honors shall seem most meet and proper in the premises."

Abigail R. Colton, complainant in the other bill, is the mother of Martha Colton, and also of David D. Colton the testator. Her bill is in substance the same as that of Martha Colton, and prays for similar relief, but contains the following:

" And your oratrix further shows that the said defendant has, although often demanded, utterly failed, neglected, and refused to make to or for your oratrix any gift or provision whatever from the estate of your oratrix' son, the said David D. Colton, except as hereinafter mentioned, that is to say : On or about March 1st, 1880, the defendant sent to your oratrix the sum of fifty dollars; and thereafter, at divers times, and at various intervals between the day last named and about the first day of January, 1881, the defendant sent to your oratrix about five other sums of fifty dollars each, amounting in the whole, as above given to your oratrix, to the sum of about three hundred dollars; and in or about the month of February, 1881, the defendant sent to your oratrix the further sum of six hundred dollars; and in or about November, 1882, she gave to your oratrix the further sum of six hundred dollars; the whole given as aforesaid, since the death of the said David D. Colton, amounting altogether to the sum of about fifteen hundred dollars only.

" Your oratrix further shows that she is now in the seventy-fifth year of her age, and that for many years prior to the death of her husband, the said Isaac W. Colton, she was in feeble health, and ever since that event she has been an invalid and endured much sickness and suffering, and has required much medical attendance, and the almost constant nursing and care of her said daughter, Martha Colton, who has always resided with her, until the present time.

" That your oratrix is not the owner of and has no interest in any real estate, or chattels real, except a one-half lot in Greenwood cemetery, near the city of New York, where her said husband is buried, and that besides her wearing apparel your oratrix has no personal property whatever except the sum of $15,000, which she has had loaned out upon interest ever since, on or about March 1st, 1877, from which time the possession and loaning out of the said sum of $15,000 by your oratrix were well known to the said David D. Colton, down to and at the time of his making his last will and testament.

" And your oratrix further shows, that her entire income

ever since the death of her son, the said David D. Colton, has consisted solely of the interest moneys arising from the loan of the aforesaid fifteen thousand dollars, and the aforesaid several sums of money given by the defendant to your oratrix as aforesaid; and ever since in November, 1882, her income has consisted and does still consist solely of said interest moneys alone.

"And your oratrix further shows, that at the time of the death of the said David D. Colton, his sister, the said Martha Colton, was not and is not now the owner of any real estate or property, nor has she any income whatever, and your oratrix has, therefore, ever since the death of the said Martha's father provided and still provides her, the said Martha, support and maintenance.

"That by reason of your oratrix' very limited income aforesaid, and notwithstanding great economy in her living and expenses and the denying herself much that would conduce to her health and comfort, your oratrix is in very straitened circumstances."

To each of these bills the defendant demurred, and for causes of demurrer assigned the following:

"First. That the said complainant hath not by her said bill made such a case as entitles the said complainant to any relief in this court. Avouching any of the matters therein complained of, in this, that no estate, trust, or interest exists in favor of said complainant or arises in her favor out of the said last will and testament in her bill set forth or any matter, legacy, or devise therein contained.

"Second. That this court hath no jurisdiction of the matters and things set forth in said complainant's bill, nor hath it jurisdiction to consider the same or to grant the relief prayed for or any relief whatever.

"Third. That neither this court nor any other court whatever hath jurisdiction to hear and determine the matters and things set forth in complainant's said bill or to grant the relief therein prayed, or any other relief whatever.

"Fourth. That it appears on the face of said complainant's bill that if any cause of action whatever exists by reason of

the matters and things in said bill set forth, that such cause of action is founded upon a stale equity and claim.

"Fifth. That it appears on the face of complainant's said bill that the said cause of action therein set forth, if any such exists, accrued more than four years before the commencement of this action, and that the same is barred upon the principle which courts of equity follow in analogy to the statute of limitation at law.

"Sixth. That it appears upon the face of said complainant's bill that the said pretended cause of action therein set forth accrued more than four years before the filing of her said bill.

"Seventh. That it appears on the face of complainant's said bill that the matters and things therein sought to be inquired of and determined have long since been inquired into and determined against the said complainant by the probate court of the city and county of San Francisco, State of California."

The demurrer to each of the bills was sustained, and they were severally dismissed. *Colton* v. *Colton,* 10 Sawyer, 325, 336. From these decrees the present appeals were prosecuted.

*Mr. Sherman Evarts* and *Mr. William M. Evarts* for appellants.

*Mr. George R. B. Hayes* for appellee. *Mr. John A. Stanly* was with him on the brief.

Mr. Justice Matthews, after stating the case as above reported, delivered the opinion of the court.

These appeals bring before us the will of David D. Colton for construction. The question is, whether his widow, Ellen M. Colton, by its provisions, takes the whole estate of which he died seized and possessed absolutely in her own right, or whether she takes it charged with a trust enforceable in equity in favor of the complainants, and, if so, to what extent. The language of the will to be construed is as follows: "I give and bequeath to my said wife, Ellen M. Colton, all of the estate real and personal, of which I shall die seized, possessed,

or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best."

Before proceeding, however, to a consideration of the will itself, we are met with the objection, interposed by the counsel for the appellee, that the matter of the present controversy has already been finally adjudicated. The proposition is, that the decree of the probate court of the city and county of San Francisco, distributing the whole of the estate of the testator to the appellee, was a complete and final adjudication as to all parties claiming, as heirs, legatees, or devisees, any interest, legal or equitable, in or to the estate, and is, therefore, a bar to the present suit. It is contended that by the law of California, the probate court, having jurisdiction over matters relating to the settlement of estates of deceased persons, and, among other matters, to distribute the residue of the estate among the persons who by law are entitled thereto, if a trust is attempted to be created by will, that court must determine how far the attempt is successful, what is the trust, who is the trustee, and who are the beneficiaries, and distribute accordingly.

As there is no plea in bar of the relief sought by the bills, setting up any decree of the probate court to which the appellants were parties, and by which they could be bound, denying to them any interest under the will of the testator, we must look to the bills themselves for the only allegations on that subject. All that is said on the subject in them is that the defendant " continued to discharge the duties as such executrix until about the 18th day of December, A.D. 1879, when, by an order or decree of said probate court, then and there duly made and entered, the whole estate, real and personal, of the said David D. Colton then remaining was distributed to the said defendant, and she was discharged from any further duties as such executrix."

The entire effect of this averment is to show that the defendant had come into possession of the estate as devisee and legatee, as she was clearly entitled to, as soon as the estate was fully administered by her as executrix. The claims in-

sisted on by the complainants are not against her as executrix, but as devisee and legatee; and the trusts alleged to be created by the will do not arise until the widow of the testator comes into possession of the estate as devisee and legatee. Whatever jurisdiction by the laws of California its probate court may have been entitled to exercise for the purpose of construing the will as between the widow and the present complainants, there is no averment in the pleadings that it was ever exercised. There is, therefore, no adjudication on the subject by the probate court, which has decided the question raised in these suits so as to operate as a bar to their prosecution.

The fundamental and controlling rules for the construction of wills are familiar and well understood. They were well stated by Chief Justice Marshall in delivering the opinion of this court in *Smith* v. *Bell*, 6 Pet. 68, as follows: "The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. 1 Doug. 322; 1 W. Bl. 672. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions which he wills to be performed after his death.' 2 Bl. Com. 499. These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law. In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him, and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them. . . . No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole. . . . Notwithstanding the reasonableness and good sense of this general rule, that the intention shall prevail, it has been sometimes disregarded. If the testator at-

tempts to effect that which the law forbids, his will must yield to the rules of law. But courts have sometimes gone farther. The construction put upon the words in one will has been supposed to furnish a rule for construing the same words in other wills; and thereby to furnish some settled and fixed rules of construction which ought to be respected. We cannot say that this principle ought to be totally disregarded; it should never be carried so far as to defeat the plain intent; if that intent may be carried into execution without violating the rules of law. It has been said truly (3 Wils. 141) 'that cases on wills may guide us to general rules of construction; but unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.'" See *Clarke* v. *Boorman's Executors*, 18 Wall. 493, 502.

The object, therefore, of a judicial interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole instrument and a comparison of its various parts in the light of the situation and circumstances which surrounded the testator when the instrument was framed. These rules of construction, indeed, apply to every written instrument, although in deeds and some other formal documents the long usage of the law has, in certain cases, required the use of technical words and phrases to accomplish particular effects. No technical language, however, is necessary to the creation of a trust, either by deed or by will. It is not necessary to use the words " upon trust" or " trustee," if the creation of a trust is otherwise sufficiently evident. If it appear to be the intention of the parties from the whole instrument creating it that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, and impose corresponding duties upon the party receiving the title, if it be capable of lawful enforcement. No general rule can be stated that will determine when a conveyance will carry with it the whole beneficial interest, and when it will be construed to create a

trust; but the intention is to be gathered in each case from the general purpose and scope of the instrument. Perry on Trusts, §§ 82, 151, 158; *Creswell's Administrator* v. *Jones*, 68 Alabama, 420.

The question upon the language of the present will, which constitutes the point in dispute, is whether the testator intended to charge his estate in the hands of his widow with a trust in favor of his mother and sister, or whether he intended his widow to take the estate free from any obligation of that character, at liberty to disregard the recommendation and request, and to make provision for his mother and sister or not out of property absolutely her own, as she might choose.

It is argued against the establishment of the trust in favor of the complainants that it is of the nature of those called "precatory trusts," founded originally in the earlier decisions of courts of equity in England and in this country, upon strained, artificial, and inappropriate interpretations of the language of testators, whereby their real intentions were perverted and defeated, according to a rule which is no longer favored as an existing doctrine of equity, and which is excluded by the express terms of the Civil Code of California, according to which the will in this case must be construed. That code provides that "a will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." Section 1317. "In case of uncertainty arising upon the face of a will as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." Section 1318. "All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail." Section 1321. "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by the inaccurate recital of or reference to its contents in another

part of the will." Section 1322. "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." Section 1324. "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative." Section 1325. "Technical words are not necessary to give effect to any species of disposition by a will." Section 1328. And by § 1319 it is provided that these rules are to be observed "unless an intention to the contrary clearly appears." In relation to trusts, the code also provides, in respect to real property, that they must be either in writing or created by operation of law (sec. 852); subject to which condition, it is further provided that " a voluntary trust is created as to the trustor and beneficiary by any words or acts of the trustor indicating with reasonable certainty; 1, an intention on the part of the trustor to create a trust; and 2, the subject, purpose, and beneficiary of the trust." Section 2221. It will be observed, however, that these statutory provisions of the State of California are merely declaratory of preexisting law, and are perfectly consistent, if not identical, with the rules of construction already noticed as of controlling and universal application.

As to the doctrine of precatory trusts, it is quite unnecessary to trace its origin, or review the numerous judicial decisions in England and in this country which record its various applications. If there be a trust sufficiently expressed and capable of enforcement by a court of equity, it does not disparage, much less defeat it, to call it "precatory." The question of its existence, after all, depends upon the intention of the testator as expressed by the words he has used, according to their natural meaning, modified only by the context and the situation and circumstances of the testator when he used them. On the one hand, the words may be merely those of suggestion, counsel, or advice, intended only to influence, and not to take away the discretion of the legatee growing out of his right to use and dispose of the property given as his own. On the other hand, the language employed may be imperative in fact,

though not in form, conveying the intention of the testator in terms equivalent to a command, and leaving to the legatee no discretion to defeat his wishes, although there may be a discretion to accomplish them by a choice of methods, or even to define and limit the extent of the interest conferred upon his beneficiary.

"All the cases upon a subject like this," said Lord Chancellor Cottenham in *Shaw* v. *Lawless*, 5 Cl. & Finn. 129, 153, "must proceed on a consideration of what was the intention of the testator." In *Williams* v. *Williams*, 1 Simons N. S. 358, 369, Vice Chancellor Cranworth said: "The point really to be decided in all these cases is whether, looking at the whole context of the will, the testator has meant to impose an obligation on his legatee to carry his express wishes into effect, or whether, having expressed his wishes, he has meant to leave it to the legatee to act on them or not at his discretion." And referring to rules for ascertaining this intention sought to be deduced from the numerous decisions on the subject, he adds: "I doubt if there can exist any formula for bringing to a direct test the question whether words of request, or hope, or recommendation are or are not to be construed as obligatory."

In *Briggs* v. *Penny*, 3 Macn. & Gord. 546, 554, Lord Chancellor Truro stated the same rule with a little more particularity. He said: "I conceive the rule of construction to be that words accompanying a gift or bequest expressive of confidence, or belief, or desire, or hope that a particular application will be made of such bequest, will be deemed to import a trust upon these conditions: first, that they are so used as to exclude all option or discretion in the party who is to act as to his acting according to them or not; secondly, the subject must be certain; and, thirdly, the objects expressed must not be too vague or indefinite to be enforced." The most recent declarations of the English courts of equity do not modify this statement of the law. *Lambe* v. *Eames*, L. R. 6 Ch. 597; *In re Hutchinson and Tenant*, 8 Ch. Div. 540; *In re Adams and the Kensington Vestry*, L. R. 27 Ch. Div. 394, 406.

The existing state of the law on this question, as received in

England, and generally followed in the courts of the several States of this Union, is well stated by Gray, C. J., in *Hess* v. *Singler*, 114 Mass. 56, 59, as follows: "It is a settled doctrine of courts of chancery that a devise or bequest to one person, accompanied by words expressing a wish, entreaty, or recommendation that he will apply it to the benefit of others, may be held to create a trust, if the subject and the objects are sufficiently certain. Some of the earlier English decisions had a tendency to give to this doctrine the weight of an arbitrary rule of construction. But by the later cases in this, and in all other questions of the interpretation of wills, the intention of the testator, as gathered from the whole will, controls the court; in order to create a trust, it must appear that the words were intended by the testator to be imperative; and when property is given absolutely and without restriction, a trust is not to be lightly imposed, upon mere words of recommendation and confidence."

In the previous case of *Warner* v. *Bates*, 98 Mass. 274, 277, Chief Justice Bigelow vindicated the soundness and the value of this rule in the following commentary. He said: "The criticisms which have been sometimes applied to this rule by text writers and in judicial opinions will be found to rest mainly on its applications in particular cases, and not to involve a doubt of the correctness of the rule itself as a sound principle of construction. Indeed, we cannot understand the force or validity of the objections urged against it if care is taken to keep it in subordination to the primary and cardinal rule that the intent of the testator is to govern, and to apply it only where the creation of a trust will clearly subserve that intent. It may sometimes be difficult to gather that intent, and there is always a tendency to construe words as obligatory in furtherance of a result which accords with a plain moral duty on the part of a devisee or legatee, and with what it may be supposed the testator would do if he could control his action. But difficulties of this nature, which are inherent in the subject matter, can always be readily overcome by bearing in mind and rigidly applying in all such cases the test, that to create a trust it must clearly appear that the

testator intended to govern and control the conduct of the party to whom the language of the will is addressed, and did not design it as an expression or indication of that which the testator thought would be a reasonable exercise of a discretion which he intended to repose in the legatee or devisee. If the objects of the supposed trust are certain and definite; if the property to which it is to attach is clearly pointed out; if the relations and situation of the testator and the supposed *cestuis que trust* are such as to indicate a strong interest and motive on the part of the testator in making them partakers of his bounty; and, above all, if the recommendatory or precatory clause is so expressed as to warrant the inference that it was designed to be peremptory on the donee, the just and reasonable interpretation is that a trust is created which is obligatory and can be enforced in equity against the trustee by those in whose behalf the beneficial use of the gift was intended."

In the light of this rule, as thus stated and qualified, we proceed to ascertain the intention of the testator in this will as to the point in controversy. In the first place, the language of the bequest to his wife is undoubtedly sufficient to convey to her at his death the whole estate absolutely and without conditions. The will says: "I give and bequeath to my said wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized or possessed or entitled to." If this stood alone there could be no controversy as to the nature and extent of her title. But it does not stand alone, and it does not contain any expressions which necessarily anticipate or limit any subsequent provisions affecting it. It does not say expressly that she shall have the absolute right to use, for her own benefit exclusively, or the absolute right to dispose of, the estate which he gives to her. Her right to use and her power to dispose are merely the legal incidents of the title conveyed by the clause considered as unqualified by its context. But the bequest to the wife is immediately followed by the clause which is the subject of the present contention. In direct connection with this gift to his wife the testator adds: "I recommend to her the care and protection of my

mother and sister, and request her to make such gift and provision for them as in her judgment will be best." It may well be admitted that the recommendation of the testator to his wife to care for and protect his mother and sister, when they should be deprived .of the care and protection which he could personally secure to them while he lived, is not sufficient of itself to create a trust and attach it to the estate of his widow, so as to be capable of enforcement. It is certainly the expression of a strong desire on the part of the testator for a continuance of care and protection by his legatee over his mother and sister, but, considered by itself, cannot be construed as creating in them an enforceable right to a beneficial interest in the estate given to his widow. It is rather a personal charge than a property charge. But he did not leave it so. The testator adds : " And request her to make such gift and provision for them as in her judgment will be best." It is immaterial in the construction of this language to determine whether the word " gift " means a donation from the legatee or from the testator, for it is also to be a " provision." It is this which he requests his widow to make, out of that provision which . the testator made directly for her, consisting of the whole of his estate, real and personal. The entire estate bequeathed to his widow is thus affected by this request. Is that request equivalent to a command, or is it a mere solicitation, which after his death she may reject and disregard without violating the terms of his will and the conditions upon which she accepted her estate under it? Is there anything in the language of the clause itself, in its context, or in the circumstances and situation of the testator when he framed it, to indicate an intention on his part to confer upon his widow the authority to accept his property, and at the same time to refuse to use it according to his request? Undoubtedly he gives to her some discretion on the subject; the gift and provision which he requests for his mother and sister is to be such as in her judgment will be best. It is to be such as will be best for them, having regard to all the circumstances, both of their necessities and the amount and sufficiency of the estate; and this proportion, which is to constitute what shall be best, is

to be determined by the widow in the exercise of her judg-
ment. It is her judgment that is to be called into exercise,
and this excludes caprice, whim, and every merely arbitrary
award; but whatever the judgment may be, and whatever
discretion is involved in its exercise, it operates only upon the
nature, form, character, and amount of the gift and provision
intended for them. The fact of a gift and provision is pre-
supposed, and stands on its own ground. Her judgment is
not invoked as to that. The only ambiguity, in respect to
whether there shall be a gift and provision or not, resides in
the single word "request." Does that mean a wish of the
testator which he intended to be fulfilled out of the means
which he had furnished to make it effectual, or does it mean
a posthumous petition which the testator understood himself
as addressing to the favor and good will of his sole legatee?

The situation of the testator at the time he framed these
provisions is to be considered. He made his will October 8,
1878; he died the next day. It may be assumed that it was
made in view of impending dissolution, in the very shadow of
approaching death. There is room enough for the supposition
that by this necessity the contents of his will were required to
be brief; the conception of the general idea to give everything
to his wife was simple and easily expressed, and capable of
covering all other intended dispositions. The time and the
circumstances, perhaps, disabled him from specifying satisfac-
tory details concerning a provision for his mother and his
sister, but he did not forget that he owed them care and
protection. That care and protection, therefore, he recom-
mended to his wife as his legatee; but he was not satisfied
with that; he wished that care and protection to be embodied
in a gift and provision for them out of the estate which he
was to leave to her. He therefore requested her to make
it, and that request he addressed to his legatee and principal
beneficiary as expressive of his will that a gift and provision
for his mother and sister should come out of it. His legacy
to them was part of his legacy to her. All other particulars,
as to its form and amount, he was willing to leave, and did
leave, to be determined by his widow in her judgment of

what would be best for his beneficiaries, so as to insure them that care and protection for which he was providing.

The substance of the bequest was his own; the form of it, shaped only by the declared purpose of his bounty, he was willing to leave to the judgment of his wife. The alternative that such discretion should assume the power to disappoint his dispositions evidently was not present in his thoughts, as it is not implied in his words.

The language of the testator immediately succeeding that under consideration throws some light on the meaning of the words in dispute. He says: "I also request my dear wife to make such provision for my daughter Helen, wife of Critten-den Thornton, and Carrie, as she may in her love for them choose to exercise." These were the daughters of the wife as well as of the testator, as it is to be inferred from the fact that he refers the whole subject of any provision for them to her love, and the provision which he requests in their behalf is to be not such "as in her judgment will be best," but only such "as she may in her love for them choose to exercise," leaving the whole question of a provision subject to the exercise of the legatee's choice, which the testator was quite willing to adopt as the dictate of the love of a mother for her children.

It is also to be assumed that the circumstances and situation of his mother and sister were remembered by the testator in the act of making his will; that they were separated from his personal care by a wide distance; that his mother was a widow, and had nearly attained the age of three score years and ten; that even before the death of his father her health was feeble, and that since, she had been an invalid, enduring much sickness and suffering, requiring constant medical attendance, and the nursing and care of her daughter, who had always resided with her; that except the lot in Greenwood cemetery, where her husband was buried, she owned no real estate, and had no income except the interest on $15,000, which had been advanced to the testator himself by his father, as a loan many years previously, and on the income from which the mother and daughter were obliged, with great economy and self-denial, to maintain themselves in very strait-

ened circumstances. A recollection of their necessities, as well as natural love and affection, must have inspired that sentence of his will by which the testator recommended to his widow the care and protection of his mother and sister, giving commanding weight and solemnity to the accompanying request "to make such gift and provision for them as in her judgment will be best;" for he also well knew that such a provision, sufficient for their comfort and independence, would not sensibly diminish the abundance of the legacy to his wife out of which it must issue.

It is an error to suppose that the word "request" necessarily imports an option to refuse, and excludes the idea of obedience as corresponding duty. If a testator requests his executor to pay a given sum to a particular person, the legacy would be complete and recoverable. According to its context and manifest use, an expression of desire or wish will often be equivalent to a positive direction, where that is the evident purpose and meaning of the testator; as where a testator desired that all of his just debts, and those of a firm for which he was not liable, should be paid as soon as convenient after his decease, it was construed to operate as a legacy in favor of the creditors of the latter. *Burt* v. *Herron*, 66 Penn. St. (16 P. F. Smith), 400. And in such a case as the present, it would be but natural for the testator to suppose that a request, which, in its terms, implied no alternative, addressed to his widow and principal legatee, would be understood and obeyed as strictly as though it were couched in the language of direction and command. In such a case, according to the phrase of Lord Loughborough in *Malim* v. *Keighley*, 2 Ves. Jr. 333. 529, "the mode is only civility."

But it is also argued that the trust sought to be established under this will in favor of the complainants is incapable of execution by reason of the uncertainty as to the form and extent of the provision intended, and because it involves the exercise of discretionary power on the part of the trustee which a court of equity has no rightful authority to control. We have seen that whatever discretion is given by the will to the testator's widow does not affect the existence of the trust.

That discretion does not involve the right to choose whether a provision shall be made or not; nor is there anything personal or arbitrary implied in it. It is to be the exercise of judgment directed to the care and protection of the beneficiaries by making such a provision as will best secure that end. There is nothing in this left so vague and indefinite that it cannot, by the usual processes of the law, be reduced to certainty. Courts of common law constantly determine the reasonable value of property sold, where there is no agreement as to price, and the judge and jury are frequently called upon to adjudge what are necessaries for an infant or reasonable maintenance for a deserted wife. The principles of equity and the machinery of its courts are still better adapted to such inquiries. In the exercise of their discretion over trusts and trustees, it is a fundamental maxim that no trust shall fail for want of a trustee, and where the trustee appointed neglects, refuses, or becomes incapable of executing the trust, the court itself in many cases will act as trustee. In *Thorp* v. *Owen*, 2 Hare, 607, 610, Wigram, V. C., said: "Whatever difficulties might originally have been supposed to exist in the way of a court of equity enforcing a trust, the extent of which was unascertained, the cases appear clearly to decide that a court of equity can measure the extent of interest which an adult, as well as an infant, takes under a trust for his support, maintenance and advancement, provision, or other like indefinite expression, applicable to a fund larger confessedly than the party entitled to the support, maintenance, or advancement can claim, and some interest in which is given to another person." And in *Foley* v. *Parry*, 2 Myl. & K. 138, where the words of a will were "and it is my particular wish and request that my dear wife and A. will superintend and take care of the education of D. so as to fit him for any respectable profession or employment," it was held that a charge was created on the interest taken by the testator's widow which could be made effectual by a court of equity.

It is quite true that where the manner of executing a trust is left to the discretion of trustees, and they are willing to act, and there is no *mala fides*, the court will not ordinarily control

their discretion as to the way in which they exercise the power, so that if a fund be applicable to the maintenance of children at the discretion of trustees, the court will not take upon itself, in the first instance, to regulate the maintenance, but will leave it to the trustees. But the court will interfere wherever the exercise of the discretion by the trustees is infected with fraud or misbehavior, or they decline to undertake the duty of exercising the discretion, or generally where the discretion is mischievously and erroneously exercised, as if a trustee be authorized to lay out money upon government, or real, or personal security, and the trust fund is outstanding upon any hazardous security. Lewin on Trusts, c. 20, § 2, 402, 403, 4th Eng. ed.

In the case of *Costabadie* v. *Costabadie,* 6 Hare, 410, 414, Vice Chancellor Sir James Wigram said : " If the gift be subject to the discretion of another person, so long as that person exercises a sound and honest discretion, I am not aware of any principle or any authority upon which the court should deprive the party of that discretionary power. Where a proper and honest discretion is exercised, the legatee takes all that the testator gave or intended that he should have — that is, so much as in the honest and reasonable exercise of that discretion he is entitled to. That is the measure of the legacy." But it is always for the court eventually to say, when called upon, whether the discretion has been either exercised at all, or exercised honestly, and in good faith. *In re Hodges, Davey* v. *Ward,* L. R. 7 Ch. Div. 754. Plainly, if the trustee refuses altogether to exercise the discretion with which he is invested, the trust must not on that account be defeated, unless by its terms it is made dependent upon the will of the trustee himself.

On the whole, therefore, our conclusion is that each of the complainants in these bills is entitled to take a beneficial interest under the will of David D. Colton, to the extent, out of the estate given by him to his wife, of a permanent provision for them during their respective lives, suitable and sufficient for their care and protection, having regard to their condition and necessities, and the amount and value of the fund from

which it must come. It will be the duty of the court to ascertain after proper inquiry, and thereupon to determine and declare, what provision will be suitable and best under the circumstances, and all particulars and details for securing and paying it.

> *The decrees of the Circuit Court are accordingly reversed, and the causes remanded with directions to overrule the demurrers to the several bills, and to take further proceedings therein not inconsistent with this opinion; and it is so ordered.*