SHIELDS *et al. v.* McAULEY *et al.*

*(Circuit Court, W. D. Pennsylvania.* December 24, 1888.)

1. WILLS—TRUSTS—PRIVATE UNDERSTANDING WITH DEVISEE.

It is a settled principle that if a testator make a devise in terms absolute, but upon a private understanding had with his devisee, whether by the latter's express promise or his assent implied from his silence, that he will apply the devised estate to some purpose designated by the testator, a trust arises which a court of equity will enforce, unless unlawful in itself.

2. SAME—BEQUESTS TO CHARITIES.

Mary McAuley died seised of a house and lot on Duquesne Way, Pittsburgh, which she had acquired under the will of her brother, James; and also possessed of a large personal estate. As respects the latter, she died intestate, but she left an instrument of writing signed by her, and which has been admitted to probate as her will, in the words following: "By request of my dear brother my house on Duquesne Way is to be sold at my death, and the proceeds to be divided between the Home of the Friendless and the Home for Protestant Destitute Women. MARY McAULEY." *Held,* that said instrument was operative as a valid declaration of the terms of a trust upon which Mary McAuley held said property, and therefore it was not affected by the act of assembly of April 26, 1855, which avoids bequests, devises, or conveyances for charitable uses unless made by deed or will, attested by two witnesses, at least one calendar month before the death of the testator or alienor.

3. DESCENT AND DISTRIBUTION—NEXT OF KIN—COUSINS.

In the distribution of the personal estate of a decedent under the intestate laws of Pennsylvania, as between first cousins and second cousins, the former take to the exclusion of the latter.

In Equity. Suit to contest the validity of a will and for administration of estate of decedent.

*Knox & Reed,* for complainants.

*Thomas Patterson,* for devisees.

*D. F. Patterson* and *John W. Donnon,* for first cousins.

*V M. Watson* and *S. Schoyer, Jr.,* for second cousins.

Before McKENNAN and ACHESON, JJ.

PER CURIAM. 1. James McAuley, who died on the 9th day of January, 1871, by his will dated and executed November 26, 1870, made large bequests to his sisters Margaret and Mary, and also devised to them a house and lot on Duquesne Way, in the city of Pittsburgh. Margaret died in 1871, a few months after her brother, and thereupon her interest in said property passed to her sister Mary, who died January 6, 1886, seised of said real estate, and leaving also a large personal estate. As respects the latter, she died intestate, but she left an instrument of writing, signed by her, (the body thereof being also in her hand-writing,) of which the following is a copy:

"By request of my dear brother, my house on Duquesne Way is to be sold at my death, and the proceeds to be divided between the Home of the Friendless and the Home for Protestant Destitute Women. MARY McAULEY."

On January 12, 1886, this instrument was admitted to probate as the will of Mary McAuley. The two named beneficiaries are corporations of the state of Pennsylvania, and charitable institutions, within the

meaning of the act of assembly of April 26, 1855, which avoids bequests, devises, or conveyances to any body politic, or to any person, in trust for religious or charitable uses, unless made by deed or will, attested by two credible, and at the same time disinterested, witnesses, at least one calendar month before the decease of the testator or alienor. Hence the next of kin of Miss McAuley contest the validity of the disposition of the proceeds of said real estate made by said instrument.

While there is no direct testimony to fix the precise date when said instrument was executed, there is circumstantial evidence quite sufficient to warrant a finding that it was much more than one calendar month before Miss McAuley's decease. But then the want of attestation by two witnesses remains as an objection against giving full effect to the paper, if it is to be treated simply as the will of Miss McAuley. Must it be so regarded? Or (as maintained by the learned counsel for the beneficiaries) may it be accepted as a valid declaration on the part of Mary McAuley of the terms of a trust upon which she held the property? It is a settled principle that if a testator make a devise in terms absolute, but upon a private understanding had with his devisee, whether by the latter's express promise or his assent implied from his silence, that he will apply the devised estate to some purpose designated by the testator, a trust arises which a court of equity will enforce, unless unlawful in itself. Lewin, Trusts, *70; *Wallgrave* v. *Tebbs*, 2 Kay & J. 313, 321; *Tee* v. *Ferris*, Id. 357; *Springett* v. *Jenings*, L. R. 10 Eq. 488; 3 Redf. Wills, 485; 1 Story, Eq. Jur. § 256; *Hoge* v. *Hoge*, 1 Watts, 163; *Church* v. *Ruland*, 64 Pa. St. 432, 442. In our judgment such a trust is shown here. The instrument in question manifestly was designed to carry out the purpose of James McAuley, the execution of which he had confided to his devisee. The paper, both in its scope and aim, is unlike an ordinary will. It deals with nothing but the Duquesne Way house. As to everything else Miss McAuley was content to die intestate. But that particular property had been devoted by her brother to charitable purposes, to take effect at her death. Evidently he had communicated his intention to her, and she had accepted the trust. All this, we think, is plain upon the face of the paper. "By the request of my dear brother, my house on Duquesne Way is to be sold at my death, and the proceeds to be divided," etc. It was, then, his intention Miss McAuley sought to effectuate. Clearly, she was acting in fulfillment of a sacred confidence. True, she herself uses the word "request," but undoubtedly her understanding was that an obligation had been imposed on her. In *Colton* v. *Colton*, 127 U. S. 319, 8 Sup. Ct. Rep. 1164, the court says:

"It is an error to suppose that the word 'request' necessarily imports an option to refuse, and excludes the idea of obedience as corresponding duty. * * * According to its context and manifest use, an expression of desire or wish will often be equivalent to a positive direction, where that is the evident purpose and meaning of the testator."

Miss McAuley, who had perfect knowledge of her brother's intention, and fully understood her own duty, having undertaken to carry out his purpose by this instrument of writing, it is not for her next of kin to

question the existence of a trust thus recognized by her, or to gainsay her deliberate act. James McAuley's will was executed more than one calendar month before he died. Whether the understanding with his devisee was entered into contemporaneously with the signing of his will, or before or after, is not known. There is, however, nothing to indicate that the arrangement was made within one month before his death, nor is this alleged in the bill. In *Manners* v. *Library Co.*, 93 Pa. St. 176, it is said that the act of April 26, 1855, being in derogation of the common-law right of conveyance, the averments of a bill must be so distinct and clear as to bring the case within the terms of the law. Certainly a court of equity will not assume illegality in this trust, but, in furtherance of the beneficent intention of the donor, will rather make every reasonable presumption favorable to its validity. In respect to the second named charity, "The Home for Protestant Destitute Women," there is a misnomer; the true title being, "The Home for Aged Protestant Women;" but this is not material, as it clearly appears that this is the institution intended. *Society's Appeal*, 30 Pa. St. 425.

2. In awarding the personal estate of the decedent (Mary McAuley) to the first cousins to the exclusion of the second cousins, the master followed the decision of the supreme court of Pennsylvania in *Brenneman's Appeal*, 40 Pa. St. 115. The precise question was involved and directly ruled in that case; and it is conceded that, if we follow that ruling, the master's distribution must be confirmed. That decision has never been qualified or questioned by the supreme court. As it gives a construction to the Pennsylvania statutes of distribution in cases of intestacy, it is binding upon this court here, even were our own judgment different. *Leffingwell* v. *Warren*, 2 Black, 599. But, in truth, we entertain no doubt whatever as to the correctness of the decision. In our opinion it is clearly in accordance with the terms and intent of the statutes