## MINOT v. HASSETT.

## CHANNING v. HASSETT.

### Civ. Nos. 50–505, 50–506.

United States District Court
D. Massachusetts.

Feb. 4, 1952.

Owen Tudor, Boston, Mass., for plaintiffs.

George F. Garrity, U. S. Atty., Philip T. Jones, Asst. U. S. Atty., Boston, Mass., for defendant.

SWEENEY, Chief Judge.

These two actions for the recovery of income taxes alleged to have been illegally assessed and collected were tried together and are sufficiently similar to be covered in one opinion. A stipulation of agreed facts has been entered into by the parties and the Court adopts it as its findings of fact. The decision in the case will turn upon the answer to the question whether the beneficiary of a trust is taxable on the entire income available for distribution to him or only on the lesser amounts actually paid or credited to him, for the reason that the trustee had discretion to add such income to capital, although in fact he paid it over to the beneficiary after the end of the taxable year. The figures in each action are different and we will confine ourselves to consideration of the Channing case for the purpose of this opinion, and the Minot case will have a like decision but with different figures. The Minot case involves the years 1939 and 1941, and the Channing case only the year 1941.

#### Summary of Facts

The plaintiff's father, William Minot, died in 1900 leaving the residue of his estate in equal shares to four of his children for life, giving each a power of appointment upon his own death. Paragraph 7 of Minot's will stated in part as follows: "All income payable hereunder shall be paid to the beneficiary quarterly or oftener if convenient, * * *". Paragraph 13 provides as follows: "I authorize whomsoever shall lawfully act as Trustees under my Will to renew or replace from time to time any mortgage or mortgages or debts which may be existing at the time of my death, or which may be created by my Executors; and I further authorize them at discretion from time to time to set aside and add to the principal of the trust fund held for any child of mine such portion of the net income of the trust property as in their judg-

ment is not required for the comfortable support and maintenance of such child, or to apply or invest the same to be applied to the reduction and payment of any indebtedness of my estate." Since 1938 the trustees have maintained for tax purposes a special trust account for the benefit of each plaintiff, in which the taxpayer has a beneficial interest. The trustees have regularly filed, annual probate accounts for the main trust and the special trusts, ending on February 18 of each year, except that a single account was filed for the three-year period commencing on February 19, 1938 and ending on February 18, 1941. The trustees and the taxpayers regularly file tax returns on a calendar year basis and use a cash basis for accounting. The trustees have made it a practice to file a fiduciary return, Form 1041, in the name of each of the trusts.

The plaintiff reported in her 1941 tax return the total trust income available for distribution to her from both trusts in the amount of $6,486.11. During that calendar year she had actually received from the trustees only $2,075.74, but on February 18, 1942 when the probate account for that year was filed the balance of $4,410.37 was paid her. Similar action occurred in the Minot case in different years. In their fiduciary accounts for 1941 the trustees deducted the entire amount, $6,486.11, which was available to her but not all distributed, as being taxable to her for that year. In May, 1943 they filed an amended return listing as deductible by the trust and taxable to the taxpayer only the actual amount received by the taxpayer, which is the amount $2,075.74. This claim for a refund was denied by the Commissioner. Down to 1928 the trustees used the power to add income to principal extensively, but between 1929 and 1941 inclusive no income was added to principal. Some of the payments were made during the year, but usually a substantial balance was left which was distributed at the close of the probate account on February 18.

The statutes involved are Sections 42 and 162 of 26 U.S.C. These sections read as follows:

"§ 42. Period in which items of gross income included.

"The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, * * *."

"§ 162. Net income.

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

    *    *    *    *    *    *

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the * * * beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the * * * beneficiaries whether distributed to them or not. * * *

"(c) * * * in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary".

To determine whether or not income "is to be distributed currently" in accordance with Section 162, paragraph (b), we must look into the context of the will or trust instrument to ascertain the intention of the testator. See Colton v. Colton, 127 U.S. 300 at page 310, 8 S.Ct. 1164, 32 L.Ed. 138. The question whether the income is to be "distributed currently" seems to be the real stumbling block in the case. The plaintiffs argue that the provision for the accretion of income to principal at the discretion of the trustees negatives the idea of regular quarterly payments. The Government argues that reading the will as a

whole we find that the intent of the testator was to provide and make available to his children a steady regular income which was to be received by them at least every three months and oftener if convenient. As further evidence of this intent, the defendant points to the spendthrift trust in the will. Reading the will as a whole, it appears that the trustees were charged with the duty, at least quarterly, of first determining what, if anything, was to be added to principal from income for that quarter. When no affirmative decision was made to take this action, then the income became currently due and payable to the beneficiaries. For thirteen years preceding the year in question the trustees had never added one penny of the income to principal. This is highly persuasive that a definite pattern had been established and that the income was needed by the beneficiaries and was so recognized by the trustees. See Lehmann v. Commissioner, 21 B.T.A. 664; State Sav. Loan & Trust Co. v. Commissioner, 7 Cir., 63 F.2d 482.

The taxpayers' argument that within the calendar year the trustees could not ascertain exactly what the amount of income for that year was is far-fetched. The confusion in this case arises from the fact that the probate accounts were not rendered on the taxable year, but overlapped except for some 49 days. What the trustees could have ascertained on February 18th could have been reasonably ascertained on December 31.

■ That the bulk of the yearly income was not paid to the beneficiaries during the calendar year but retained for several months thereafter does not affect the situation, as the money was at all times in the hands of the trustees and the taxpayers were charged with constructive receipt of the income. In Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 337, 74 L.Ed. 916, the Court stated the rule as follows: "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." At all times during the year these beneficiaries had the present current right to receive such income as had been re-

ceived by their trustees, and this being so, under the doctrine of constructive receipt it is chargeable to them as income.

### Conclusions of Law

From the foregoing I conclude and rule that the trust income was currently distributable within the meaning of Section 162(b) quarterly as earned.

I conclude and rule that at the end of each quarter such income as had not been affirmatively set aside as an accretion to the principal became due and payable to the beneficiaries.

I conclude and rule that in the case of Channing v. Hassett the sum of $6,486.11 was received by the beneficiary either actually or constructively during the calendar year 1941.

I conclude and rule that in the case of Minot v. Hassett the sum of $14,189.53 was received by the beneficiary either actually or constructively during the calendar year 1939 and $12,429.82 was received by the beneficiary either actually or constructively during the calendar year 1941.

Judgment is to be entered for the defendant and the actions are to be dismissed.