Santo Asilo de Ponce *v.* Martínez et al.

Appeal from the District Court of Ponce.

No. 480.—Decided May 24, 1910.

Wills—Interpretation Thereof.—The first and just rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the law.

Id.—How They Should be Considered.—The whole will must be taken together and be so construed as to give effect, if it be possible, to the whole.

Id.—Ambiguous Expressions.—The intentions of the testator must be gathered from his words, and in the construction of ambiguous expressions, the situation of the parties may very properly be taken into consideration, as also the ties which connect him with his legatees, the affection subsisting between them, the motive which may reasonably be supposed to operate with him, and to influence him in the disposition of his property.

ID.—FIRST LAW IN MATTER OF SUCCESSIONS.—The will of the testator is the
first law in the matter of successions.

ID.—WORDS OF THE TESTATOR.—Although the words of the testator must be con-
strued as they stand, an exception to this rule is made when it appears
beyond all doubt that his will is different from that literally expressed.

The facts are stated in the opinion.

*Messrs. José Tous Soto and Harry P. Leake* for appellant.

*Messrs. López de Tord, and Canales and L. Yordán Dávila,*
for respondents.

MR. JUSTICE DEL TORO delivered the opinion of the court.

On July 26, 1909, the "Asociación de Señoras Damas del
Santo Asilo de la Villa de Ponce," filed a complaint in the
district court against Josefa Diana Martínez et al., prosecut-
ing an action for recovery and alleging the following facts:

"1. That the plaintiff is a civil association, of a benevolent char-
acter, consisting in hospital attendance for the sick poor, duly estab-
lished and recorded in the registry of associations, in accordance
with the provisions of the law of associations of June 13, 1888, and
with legal capacity to sue and be sued.

"2. On September 17, 1873, Juan Bautista Silva, being unmarried
and having no heirs by force of law, made a will before Notary
Francisco Parra Puperón, in which, among other things, he provided
the following:

"'Inasmuch as I have no heirs by force of law, and I do not
wish that what I own should be divided, since it cost me many years
of work and economy, it is my deliberate will that after setting apart
the aforementioned legacy for María Juliana and Ramona Isabel,
children of the freedwoman, Carmen, and two cows with calf, one
for each of them, as well as the amount necessary to meet the ex-
penses of my illness and burial, all the residue of my estate, com-
posed of lands, animals, and debts in my favor which I have specified,
be taken possession of and delivered to my good friend, Juan Apo-
linario Laboy, a resident of Ponce, in whom I have reposed full con-
fidence for a long time, and who disinterestedly serves and accom-
panies me during my illness, I hereby appoint and constitute him
my sole voluntary heir to such property *during his lifetime,* under
the following *necessary conditions which I impose upon him:* First,
That the net usufruct or product of such property, after payment of
the municipal and other legal taxes, be divided into two equal por-

tions, one for said heir, Laboy, in just compensation of his good administration and zeal for said interests, and the other to provide for the destitute sick of the Santo Asilo de Caridad de las Damas de Ponce, the liquidation of profits and delivery of this portion to be made at the end of every year by the said heir and administrator, without any outside intervention of any kind, leaving it as a matter of conscience, inasmuch as the product from properties of the character I leave depend more or less on whether the seasons of the year are favorable or not and on there being no lack of rains at the proper time; Second, That as my special purpose is to prevent my properties, which have cost me so many privations and work, from being dismembered or divided, upon the death of Laboy they are to pass, under the proper inventory, to the person who may deserve the confidence of the said Juan Apolinario Laboy, with the same powers and for the same purpose which I have stated, and to this end the moment the latter shall enter upon the ownership and possession of my said property, he *must* execute in *proper form his last will,* naming the person who is to succeed him in said trust, said power of substitution which I grant Laboy in this connection to be transmitted, as I have said, to a person of his confidence, by the latter to another person in whom he has trust, and thus successively, always by a formal *will,* or other authentic act, which each will execute successively the moment he enters upon his duty as *substitute heir;* and, Third, That whether by reason of this requisite of the substitution in due time, as I recommend, or through the claims of any relative of mine or outsider, or in any other way or through any other cause or claim it should be sought to have said estate—that is, the property constituting it—considered vacant or intestate, I desire and it is my will that in the latter case, upon the death of the said Laboy, my first heir, such property pass to the said Santo Asilo de Damas de Ponce, which I appoint my substitute heir, recommending especially to this society that it maintain such property as far as possible under good administration, and apply only the income therefrom to alleviating the condition of the sick poor of said institution.'

"3. That the 'Santo Asilo de Damas,' referred to in the above will, is the plaintiff association—that is to say, the 'Asociación de Señoras Damas de Ponce'—known and generally called by the name which appears in the said will.

"4. That the property left by the testator, Juan Bautista Silva, includes the following: There are described in detail: (*a*) A rural estate of 400 *cuerdas;* (*b*) Another rural estate of 126 *cuerdas;*

(*c*) Another rural estate of 50 *cuerdas;* (*d*) A tract of land of 8 *cuerdas;* (*e*) A tract of 2 *cuerdas;* (*f*) A frame house; (*g*) A tract of a *cuerda* and a half; (*h*) A mortgage credit for $600; and (*i*) A house and lot.

"5. That Juan Bautista Silva died on December 17, 1873, without having revoked or modified his will above referred to, and without having left any heirs by force of law; and upon said date his executor and voluntary heir, Juan Apolinario Laboy, entered on the possession of the property of the estate, applying the income therefrom as prescribed by the testator.

"6. That on September 30, 1875, Juan Apolinario Laboy appeared before Francisco Parra Duperón, a notary of Ponce, and executed before him an instrument of substitution of inheritance (which does not possess the requisites and formalities of a will), in which, after inserting the clause of the will of Juan Bautista Silva, transcribed in this complaint, he stated:

" 'That the inventory of the property of Silva having been made and he having been placed in possession thereof, he appears, by this notarial act, for the purpose of complying with the condition imposed in the will, and appoints and names as the substitute heir of the said Silva the legitimate wife of the declarant, Dominga Fernández de Laboy, a resident of this city, and *in the event of the death or other legal incapacity of the latter,* her foster son, José Laboy, 15 years of age, who lives with her, and, in the event of his still being a minor, he appoints, as guardian *ad bona,* Juan José Vázquez, a resident and landowner of this district and a person in whom he has full confidence, relieving him from any bond or security for the discharge of this office, and conferring upon such substitute heirs the same full powers granted by Silva to the declarant under the will and clause thereof inserted.'

"7. That Juan Apolinario Laboy died before his wife, Dominga Fernández Valdés, without leaving a will, and upon the death of her husband, without any title other than the document referred to in the preceding statement, she took possession of the property of the Estate of Juan Bautista Silva and administered it until her death, delivering annually to the plaintiff association one-half of the income from said property.

"8. That Dominga Fernández Valdés made a will before Notary Francisco Parra on April 24, 1869, at which date neither Juan Apolinario Laboy nor Juan Bautista Silva had died, nor had the latter made his will, and, therefore, she had not taken possession of the

property left by the said Juan Bautista Silva; and neither in said will of Mrs. Valdés, nor in any other document, does she make any reference to the administration and management of the said property, nor designate any person to administer the same upon her death.

"9. That Dominga Fernández Valdés, in her said will, constituted as her universal heir José Laboy Fernández, and that the latter, upon the death of Dominga Fernández Valdés, which occurred about January 15, 1891, without any title whatsoever, unlawfully took possession of the property left at his death by Juan Bautista Silva, alleging that he was entitled thereto under the clause of the will of Juan Apolinario Laboy, transcribed in the seventh statement of fact.

"10. That at the death of José Laboy Fernández, the wife of said Laboy, Josefa Diana Martínez, took unlawful possession of the property left by Juan Bautista Silva, alleging that she had a right to do so because she had been appointed by her husband, José Laboy, the administratrix of the property left by Juan Silva, and that said defendant is at present in possession of such property, with the exception of the tracts of land hereinafter described.

"11. That Josefa Diana Martínez, by means of possessory proceedings instituted in and approved by the former District Court of Ponce, in which she falsely alleged that she possessed as owner the estates described under letters (*a*) and (*b*), has recorded said real property in her own name in the registry of property, without even mentioning the plaintiff association in said proceedings; and, subsequently, she endeavored to have her record of possession converted into a record of ownership, which she was not successful in doing because of the opposition of plaintiff. The possession of the real property (*a*) was recorded in the name of Josefa Díana Martínez exclusively, *without prejudice to a third person having a better right to the property,* in the Registry of Property of Ponce, at folio 187 of book 8 of Santa Isabel, estate 291, first record; and estate (*b*), also without prejudice to third persons, at folio 144 of book 8 of Santa Isabel, estate 198, first record.

"12. That the estate described under letter (*b*) was leased by José Laboy to Domingo González, by deed of February 1, 1894, executed before Notary José Rodríguez, from said date to July 31, 1899, for the annual rental of 140 *pesos,* one-half payable to the lessor and the other half to the 'Asilo de Damas.' This lease was extended by public deed of August 18, 1896, executed before Notary Rosendo Matienzo Cintrón, to August 1, 1904, under the same conditions; it was assigned by González to José María Monserrate by deed of September 13, 1898; and again assigned by José María Monserrate to

Carlos Cabrera by deed of December 31, 1900. By deed of May 8, 1900, executed before Notary Rafael León, José' Laboy leased the said estate to Manuel Monserrate, *without the consent* of the plaintiff, for a term of five years—that is to say, from August 1, 1904, to August 1, 1909—for the rental of 700 provincial *pesos* for the entire term—that is to say, 140 *pesos* per annum—of which the lessor acknowledged the receipt of one-half—that is to say, 350 *pesos*—the remaining 350 *pesos* being retained by the lessee to be paid to the plaintiff at the rate of 35 *pesos* every six months. That said lease, also *without the consent of the plaintiff*, was assigned by Manuel Monserrate by said deed of December 31, 1900, executed before said Notary León, to Carlos Cabrera y Paz, and extended in favor of the latter by José Laboy, by deed of February 6, 1901, executed before the same notary, to January 31, 1909, for the rental of $546 for the entire term of its duration (six and a half years)—that is to say, at the rate of $84 per annum—the lessor acknowledging the receipt of one-half of' said sum, the lessee to pay the remaining half, at the rate of $21 every six months, to the plaintiff; the last lease was also made without the consent or knowledge of the latter, to the serious prejudice and detriment of their interests and for a ridiculous rental; and it is to be noted that although 126 *cuerdas* are leased in the said contracts to Cabrera, he enjoys and possesses only 117.25 *cuerdas*.

"13. That José Laboy, alleging that he is the owner of a tract of land of 13.72 *cuerdas*, forming part of the estate (*b*) belonging to the Estate of Juan Bautista Silva, which fact was known to Laboy, instituted proceedings to establish the possession of said tract in his favor, which were approved on May 6, 1892 without prejudice to third persons having a better right to the ownership, and it was recorded in his name in the Registry of Property of Ponce, at folio 140, volume 4, of Santa Isabel, estate 151, under the following description:

" 'A tract of land consisting of 13⅓ *cuerdas* situated in the *barrios* 'Boca' and 'Velázquez,' of Santa Isabel, bounded on the north by the property belonging to Jaime Baz, on the south and east by property of the Estate of Apolinario Laboy, estate (*b*), and on the west by property of Sotero Febo Monserrate, which estate is that marked letter (?) on the plan or exhibit attached.'

"14. That this tract was sold by Laboy to Rufino Tricoche, this sale being recorded in the registry of property, and the latter sold one *cuerda* to Julio Mercado and leased him the remaining 12.33 *cuerdas* for a term of six years to expire March 2, 1910; and that

said Tricoche and Mercado possess said estates at the present time, the ownership of which is vested in the plaintiff.''

The complaint contains 10 more allegations of fact relating to the proceedings, sales and leases for 5, 6 and 10 years made without the consent of the plaintiff; all relating to the estates described in the fourth allegation of fact and everything set forth clearly and in detail.

The defendants, Carlos Santiago, Rufino Tricoche, and Julio Mercado, Mauricio Zambrana, Juana Campos, Josefa Diana Martínez, Carlos Cabrera, Julio Rivas, and Tomás Torres Grau, demurred to the complaint, and the parties having been heard, the district court rendered the following judgment on October 9, 1909, which was entered the same date.

''In the city of Ponce, P. R., this 9th day of October, 1909, the demurrer to the complaint having been examined and the arguments of the parties, through their respective counsel, having been heard, the court holds that the law and the facts are in favor of the defendants and against the plaintiff association; and, therefore, sustaining the demurrer in so far as it alleges that the complaint does not state facts sufficient to constitute a cause of action in this case, the complaint should be dismissed, and is dismissed, with the costs against the plaintiff.''

This appeal was taken from said judgment and the question to be considered and decided is simply whether the complaint does or does not state facts sufficient to constitute a cause of action.

The record does not contain the opinion of the trial judge— that is to say, the expression of his reasons for holding that the complaint did not state facts sufficient to constitute a cause of action.

The appellant alleges in support of the prayer for the reversal of the judgment that it appears from the facts alleged in the complaint: 1. That the condition relating to the appointment of substitutes is valid because it does not consti-

tute a *familiar trust;* 2. That it does not constitute a trust of any kind, but a charitable endowment in which the patrons are called heirs; 3. That on the hypothesis of the nullity of the substitution, in order to be able to execute the will of the testator in the best possible manner, it would be necessary to deliver the property to the "Asilo"; 4. That upon this hypothesis, and aside from the preceding consideration, as Silva had not disposed of the ownership of his property but, at the utmost, the life usufruct thereof in favor of Juan Apolinario Laboy, upon the death of the latter the estate became vacant and belongs to the "Asilo"; 5. That, assuming the validity of the clause of substitution, José (Juan?) Apolinario Laboy failed to comply therewith by not making the appointment of a substitute in a will; 6. That if Juan Apolinario Laboy did not fail to comply therewith, there is no question of the fact that it was not complied with by Dominga Fernández Valdés, the substitute which Laboy appointed by notarial act; 7. That José Laboy derives his alleged right from his appointment as a substitute, which is void, and which in any event never was effective; 8. That Josefa Diana Martínez derives her alleged right from José Laboy who, not having it, could not convey it; 9. That whatever may be the efficiency of the clause of substitution, its annulment cannot be applied for except by the heirs of José (?) Apolinario Laboy or by those of Silva; and, 10. That in addition Josefa Diana Martínez is estopped from demanding the annulment, because she possesses the property invoking the will of Silva.

And the respondents allege in support of their prayer the affirmation of the judgment, that for the purposes of the demurrer, accepting the facts as they are alleged in the complaint, the following questions of law arise therefrom which show lack of a cause of action on the part of the plaintiff and appellant:

1. Juan Apolinario Laboy was constituted the voluntary universal heir of Juan Bautista Silva in the will which the latter made on December 17, 1873.

2. The condition that the testator, Silva, imposed on his heir, Laboy, tended to create a perpetual trust with the prohibition to alienate, which was prohibited by law.

3. The heir, Laboy, was not obliged to appoint a substitute, and the trust clause being null, he was under no obligation whatsoever to make restitution, being, therefore, an unconditional heir, because void conditions are considered not to have been imposed.

A careful examination of the allegations and the law applicable does not permit us to arrive at this conclusion. From whatever point of view the question is considered, the complaint states facts sufficient to constitute a cause of action.

If we hold that the will of Silva is valid in every respect, then, taking into consideration the other facts alleged, the right of the plaintiff association to the estate of Silva is evident, in accordance with the mandates of said will.

The designation of a substitute made by Juan Apolinario Laboy, with respect to his wife, Dominga Fernández, may perhaps be considered valid, because although it was not made by will, it was made by an authentic instrument. But upon the death of the wife, substitute of Juan Apolinario Laboy, the Estate of Silva should have passed to the asylum, in accordance with the will of the testator in view of the fact that said substitute, Dominga Fernández, who, at the death of Laboy, assumed charge of the estate and had applied it as directed in the will of Silva, had failed to appoint her substitute, either by will or by any other authentic act, which omission could not be supplied either by the will of Mrs. Fernández executed in 1869, four years before Silva made his will, or by the appointment made by Juan Apolinario Laboy in favor of José Laboy in the same document, in which he appointed his wife his substitute, in the event that she should die or become legally disqualified. José Laboy, therefore, entered upon the possession of the Estate of Silva without any authority, and, consequently, so did the defendant, Josefa Diana Martínez. But even if José Laboy and Josefa Diana Mar-

tínez had entered upon the enjoyment of the estate legally and in accordance with the will of Silva, the acts of the former in selling the real property of the estate as his own and of the latter, in seeking to record in the registry, in her name, the ownership of the real property belonging to the estate, involve a violation of the will of the testator of such a nature as to render necessary the application of the third condition of the clause of the will inserted in the complaint.

And if we hold that the clause of the will of Silva is void in that it constitutes a trust prohibited by the law, the right of the plaintiff association to the estate in question is also clear, because if the clause was null in this respect, substitutes could not be appointed to preserve the property perpetually, and in this case, such a disposition should have been made of the estate as should prove most equitable and come nearest to carrying out the will of the testator.

"The fundamental and controlling rules for the construction of wills are familiar and well understood. They were well stated by Chief Justice Marshall in delivering the opinion of this court in *Smith* v. *Bell,* 6 Pet., 68, as follows: 'The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law.' (1 Doug., 322; 1 W. Bl., 672.) This principle is generally asserted in the construction of every testamentary deposition. This is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions, which he wills to be performed after his death.' (2 Bl. Com., 499.) These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law. In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him, and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them. * * *. No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the

whole. * * *. Notwithstanding the reasonableness and good sense of this general rule, that the intention shall prevail, it has been sometimes disregarded." (*Colton* v. *Colton,* 127 U. S., 309.)

"The will of the testator is the first law in the matter of successions." (Decisions of the Supreme Court of Spain of April 6, 1866.; December 10, 1867; March 26, 1870; April 28, 1882; February 1, 1883; April 13 and 17, 1883; October 10 and November 13, 1883; October 12, 1885; September 29, 1886; June 22, 1887; March 22 and 26, 1888; March 15, 1890, and May 29, 1893.)

In our judgment the will of the testator in this case is very clear. He wished:

1. To retain intact forever the property which had cost him so much work and so many privations;

2. To devote one-half of the net usufruct from said property to provide for the sick poor of the "Santo Asilo de Caridad de las Damas de Ponce";

3. To constitute a personality for all time to take charge of the execution of his wish, by selecting in the first place his good friend, Apolinario Laboy, who enjoyed his entire confidence and disinterestedly served him and accompanied him during his illness, and giving him the power to select another person, and the latter another, and so on. This administering personality was to receive one-half of the net usufruct of the property in compensation for his good administration and zeal; and

4. In the event that "it should be sought to make or suppose his estate to be vacant," through the claim of any relative or outsider, or *in any other way or through any other cause or claim,* that upon the death of Laboy his property should pass to the "Asilo," recommending especially to this association that it *maintain such property as far as possible* under good administration and apply only the net income therefrom to alleviating the condition of the sick poor.

The respondents allege that as the dispositions of the testator could not be complied with in full because some of them, those creating a trust with the prohibition to alienate

being contrary to law, the will of the testator should be construed in the sense that the estate belonged entirely, without any limitation whatsoever, to Juan Apolinario Laboy, inasmuch as in his will Silva constituted him his only voluntary heir.

It is true that Laboy was constituted a voluntary heir in the will, but the will also provides that such constitution is *for the lifetime* of Laboy and under the precise conditions imposed, and he is also called in the will "the heir and administrator."

If the word "heir," employed in the will with respect to Laboy, were given the scope which the respondents seek to give thereto, the will of the testator so clearly expressed, as we said above, would be violated, and "although the words of the testator must be construed as they stand, an exception to this rule is made when it appears beyond doubt that his will is different from that literally expressed." (Decisions of the Supreme Court of Spain of February 22, 1872; April 1, 1879; and, May 24, 1882.)

If it is not possible to comply with all the testamentary dispositions of Juan Bautista Silva, the law being opposed thereto, it would be more just and more in accordance with the will of the testator to give to his property the application which he himself ordered in the third clause of his will inserted in the complaint, namely, to employ it in the maintenance of the sick poor who are inmates of the asylum supported by the plaintiff association, than to leave it to the exclusive enjoyment and use of persons like the defendant, Josefa Díana Martínez, who is not connected with the testator either by ties of blood or of affection, and who has failed to comply with the mission entrusted to her, of faithfully administering a large fortune for her own benefit and for the benefit of the sick poor who are inmates of the asylum.

Therefore, from any point of view, that the questions involved in this case be considered, the conclusion is reached, as we have heretofore said, that the complaint states facts

sufficient to constitute a cause of action. Therefore, the appeal should be allowed and the judgment appealed from reversed.

*Reversed.*

Chief Justice Hernández and Justices MacLeary and Wolf concurred.

Mr. Justice Figueras did not sit at the hearing of this case.