Susan B. Armstrong, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 82552. Promulgated September 29, 1938.

*George A. Wilson, Esq.,* and *Paul L. Peyton, Esq.,* for the petitioner.

*J. R. Johnston, Esq.,* for the respondent.

## OPINION.

VAN FOSSAN: The sole question presented by the above facts is whether the payment of $25,000 of the sum of $88,200.35 received by the trustees on July 30, 1932, from the Fajardo Sugar Co., represented a return of capital and, therefore, not income to the trust to be distributed currently to petitioner.

Respondent contends that the transaction of July 31, 1931, transferring the $25,000 Fajardo note and accrued interest thereon to the new firm for $26,522.30 in cash was in fact a purchase and sale of this note. On this premise he urges that the proceedings were highly irregular and totally without the authority of the executors and trustees. He further urges that the restoration of the sum in question by the redemption of the assignment in the taxable year in question does not in any way affect petitioner's tax liability on the income because the entire amount of the $88,200.35 payment received by the trustee on July 30, 1931, from the Fajardo Sugar Co. was income to the trust distributable to petitioner.

Petitioner's contention with respect to this phase of the case is that the transaction was entirely regular and unquestionably made the payment by the Fajardo Co. a return or redemption of capital to the extent of $25,000.

The nature of the July 31, 1931, transaction becomes important in determining the status of the subsequent redemption of the assign-

ment of accrued interest in 1932, and a short resumé of the facts will be helpful. A substantial part of the assets of decedent's estate was comprised of his interest in the partnership and, in turn, the partnership's largest asset was the account receivable from the Fajardo Sugar Co., for which notes were given in the full amount of the account, plus interest to date. The estate had no desire to become a member of the new partnership and the partnership did not have sufficient cash to liquidate the estate's interest. An agreement was therefore entered into whereby a group of the Fajardo notes were transferred to the estate and the new partnership agreed that it would pay the estate annually, on account of the interest then accrued and unpaid on the Fajardo notes held by the estate, cash in an amount equal to the face amount of one of the notes ($25,000), plus interest to the time of payment. In return the estate either was to make an assignment to the new partnership of the right to receive the interest thus paid, or, at the option of the new partnership, was to deliver one of the Fajardo notes to it. Upon payment under this agreement on July 31, 1931, the new partnership exercised its option and received one of the notes theretofore held by the estate.

From these facts respondent contends that the transaction between the estate and the new partnership is a purchase and sale; and that the estate has, in effect, sold and distributed a portion of its principal. The argument is that the cash received from the transaction was cash paid for a principal asset of the estate, a Fajardo note, and that it must necessarily be impressed with the same character. If this argument presented the entire picture of the transaction, the above conclusion might follow. There are further considerations, however, which, in our view, alter the situation. In the first instance, the new partnership was, in effect, guaranteeing the partial payment of *interest* on the notes; and, secondly, by the agreement and the subsequent treatment and disposition thereof, the cash was paid and received as *interest* on the notes. We believe these facts fixed the character of the transaction. The fact that the partnership exercised its election to take a note in lieu of an assignment of interest does not change the character of the payment to the estate. The cash did not come into the hands of the executors in lieu of their capital asset, the Fajardo note—the cash came to them as interest. What came to them as a capital asset in lieu of the note was the assignment to the principal account from income account of all interest then accrued and unpaid on the Fajardo notes to the extent of $25,000. It was this assignment which took care of the otherwise impaired principal account. The notes were equally secured as to principal and interest, so the assignment in the principal account of accrued and unpaid interest was of equal dignity to a claim for the face amount of the

notes themselves, and the estate in no wise was prejudiced by the transaction.

When viewed in the full light of all the facts the entire transaction speaks of neither a purchase and sale, nor of a borrowing with the posting of collateral. It is what it purports to be, i. e., a guarantee and payment thereunder of interest accrued and unpaid.

The assignment of accrued interest stood as much a part of the principal of the estate as any other of its assets and it was the duty of the trustees to apply money received on account of interest to the extent of $25,000 to the redemption of the assignment. Such money had theretofore been impressed with the character of capital and upon its receipt was capital. Under the circumstances it was not and could not be income distributable to petitioner beneficiary.

Recognizing, as we do, the above status for the interest paid in 1932 to the extent of $25,000, we do not find ourselves in accord with the contention by respondent that petitioner possessed the right to receive the interest to the extent of $25,000 and that the redemption in effect was for the benefit of petitioner and in settlement of an obligation on her part to replace the impaired capital.

If there be any doubt as to the above construction of the facts, there is a further reason why petitioner should prevail. The decrees entered by the Surrogate's Court are conclusive of the issue presented here.

The stipulated facts show that the Surrogate's Court for the County of New York, having jurisdiction of the estate and testamentary trust, has twice approved all the transactions involved in this manner of handling the estate and trust.

By court decree the action of the executors in treating the payment of July 31, 1931, as income when received, and in turning over to the trustees as a principal asset the assignment of accrued interest, was approved. And subsequently, by court decree, the intermediate accounting of the trustees determining the payment of $25,000 in 1932 to be a receipt of principal, was also approved. The decrees of that court are final and conclusive of these questions and are binding upon this Board.

It is a well recognized rule that where the question involved is the meaning of a revenue law the will of Congress controls over local law. The obvious reason for this rule is to effect an interpretation of Federal statutes of uniform application to a nation-wide scheme of taxation. *Eagan* v. *Commissioner*, 43 Fed. (2d) 881. Where applicable, this principle is controlling, but when the legislative will is dependent upon facts which can be interpreted only in accordance with a state rule of property, the state rule must then prevail. Included in this category of state or local determinations which are

controlling in Federal tax matters, are rules governing the construction of wills, and administration of estates and testamentary trusts.

In our opinion the present case is within this last mentioned limitation on the rule and the decrees of the Surrogate's Court determining the status of the 1932 payment, to the extent of $25,000, are binding upon this Board.

Respondent strongly urges the contrary because no actual contest was presented to the surrogate. There is, however, no evidence of collusion in the present case; all interested and necessary parties were represented and from the nature of the proceeding the court's approval and decree must conclude the matter. The particular subjects now in issue were directly before the court and were specifically discussed in the report of the special guardian for the infant remainderman.

The leading case on the conclusiveness of a determination by a local court concerning the amount distributable to the beneficiaries under a trust, is *Freuler* v. *Helvering*, 291 U. S. 35. It was there held that the decree of the state court was binding. The Court said:

* * * The decision of that court, until reversed or overruled, establishes the law of California respecting distribution of the trust estate. It is none the less a declaration of the law of the state because not based on a statute, or earlier decisions. The rights of the beneficiaries are property rights and the court has adjudicated them. What the law, as announced by that court, adjudges distributable is, we think, to be so considered in applying section 219 of the Revenue Act of 1921.

In that case it was argued that the proceeding in the state court was a collusive one, but this argument was rejected in view of the record in the state court. The Court said:

* * * The case appears to have been initiated by the filing of a trustee's account, in the usual way. Notice was given to the interested parties. Objections to the account were presented, and the matter came on for hearing in due course, all parties being represented by counsel. The decree purports to decide issues regularly submitted and not to be in any sense a consent decree.

A case following the principle of *Freuler* v. *Helvering*, *supra*, and possibly closer to the present factual situation, is that of *Letts* v. *Commissioner*, 84 Fed. (2d) 270 (C. C. A., 9th Cir.), affirming 30 B. T. A. 800. In that case the trustees filed their account showing therein the sum of over $6,000,000 received by them as trustees during the taxable year and the distribution by them of a sum of over $1,000,000 as net income to the beneficiaries of the trust. The trustees prayed for and obtained from the local court having jurisdiction over the matter an order "approving, allowing, and settling said account." The Federal court, in arriving at its decision, followed the rule enunciated in the *Freuler* case, *supra*, and said:

Whether, under the will, income received by the trust was or was not currently distributable, was to be determined, in the first instance, by the

trustees themselves and, finally, by the state court having jurisdiction of the trust. Petitioner and his cotrustees determined that, of the $6,998,888.24 which the trust received from the Holmby Corporation in 1927, $1,185,088.24 was net income currently distributable to the beneficiaries of the trust. They accordingly made such distribution and so reported to the court in their account heretofore referred to. The court, after hearing the matter, made its order approving, allowing, and settling the account, thereby finally determining that the $1,185,088.24 was currently distributable to the beneficiaries of the trust, including petitioner. That order has not been reversed or overruled and is, therefore, conclusive. *Freuler* v. *Helvering*, 291 U. S. 35, 43, 45, 54 S. Ct. 308, 78 L. Ed. 634.

The Supreme Court of the United States, in *Blair* v. *Commissioner*, 300 U. S. 5, adhered to the rule of the *Freuler* case, *supra*, and held that a decision of a state court determining a trust there under consideration not to be a spendthrift trust, and further holding that certain assignments of income were valid, was binding upon the Federal courts. The Court there said:

The question of the validity of the assignments is a question of local law. The donor was a resident of Illinois and his disposition of the property in that State was subject to its law. By that law the character of the trust, the nature and extent of the interest of the beneficiary, and the power of the beneficiary to assign that interest in whole or in part, are to be determined. The decision of the state court upon these questions is final. *Spindle* v. *Shreve*, 111 U. S. 542, 547, 548; *Uterhart* v. *United States*, 240 U. S. 598, 603, *Poe* v. *Seaborn*, 282 U. S. 101, 110, *Freuler* v. *Helvering*, *supra*, p. 45. It matters not that the decision was by an intermediate appellate court. Compare *Graham* v. *White-Phillips Co.*, 296 U. S. 27. In this instance, it is not necessary to go beyond the obvious point that the decision was in a suit between the trustees and the beneficiary and his assignees, and the decree which was entered in pursuance of the decision determined as between these parties the validity of the particular assignments. Nor is there any basis for a charge that the suit was collusive and the decree inoperative. *Freuler* v. *Helvering*, *supra*. The trustees were entitled to seek the instructions of the court having supervision of the trust.

*Hubbell* v. *Helvering*, 70 Fed. (2d) 668 (C. C. A., 8th Cir.), following the *Freuler* case, held that where the local state court decided that beneficiaries could not recover amounts retained by trustees from income of a trust for depreciation on trust property and for undepreciated cost of obsolete buildings, the amounts are not distributable to the beneficiaries nor taxable to them.

Respondent's attempt to distinguish the present case from the above cited controlling cases is not convincing.

We conclude and hold, therefore, that the payment to the trustees by the Fajardo Co. in 1932 of interest on its notes was not, to the extent of $25,000, income distributable to petitioner.

Reviewed by the Board.

*Decision will be entered for the petitioner.*