CRAIG et al. v. UNITED STATES.

Civ. A. No. 2960.

District Court, W. D. Pennsylvania.

Oct. 10, 1946.

230

James M. Houston, of Pittsburgh, Pa., for plaintiffs.

Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., and Frederic G. Rita, Sp. Asst. Atty. Gen., of Washington, D. C., for defendant.

GOURLEY, District Judge.

This is a suit for a refund of income taxes paid by the estate of Pressly T. Craig during the year 1936, for the period from April 20, 1936 to December 31, 1936, inclusive. The plaintiffs in the case are the three executors of the estate of Pressly T. Craig, deceased, who died a resident of Allegheny County on April 20, 1936. Pressly T. Craig died testate, his last will and testament, dated March 14, 1933, and codicil thereto, dated August 21, 1934, were probated in the office of the Register of Wills of Allegheny County, Pennsylvania, and letters testamentary were issued to the plaintiffs in this action on April 28, 1936.

On or about April 23, 1937, the plaintiffs filed a first and partial account of their administration of the decedent's estate, said account having been duly audited and confirmed by decree of Orphans' Court of Allegheny County, Pennsylvania, on June 23, 1937. In the first and partial account the executors set forth various items which were paid to legatees, which hereinafter will be discussed, and no exceptions or objections were filed by any person interested in said estate as to any items, regardless of their nature, which appeared in said account. This estate was very sizeable in nature; the personal estate being appraised at $3,156,604.78, and the real estate at $223,049.50. The balance of the fund which remained for distribution, after allowance being given for the various items which were set forth in the first and partial account, to wit, $2,672,297.73, was awarded to the executors for further accounting.

On April 3, 1939, the plaintiffs filed their second and final account of their administration of the decedent's estate, to which exceptions were filed by various parties to the various items which appear in the second and final account but which have no direct bearing or relationship to the matters now before the Court for consideration. In addition thereto, one of the life beneficiaries under the last will and testament of the deceased filed a petition for review of the first and partial account.

It appears that in the first and partial account the plaintiffs in this action claimed credit for a legacy in the amount of $12,500 paid to Elsie Craig Simpson from the income of the estate. The life tenant excepted to this payment being made from the income of the estate, and contended that it should have been made from the principal. The Orphans' Court of Allegheny County, Pennsylvania, held in a written opinion that in order to carry out the intention and direction of the testator, the legacy must be paid from the corpus of the estate.

It furthermore appears from the will and Codicil that the deceased provided for the payment of the amount of $2,000 to Elsie Craig Simpson each and every year during the full term of her natural life, in quarter-yearly installments. In order that the estate could be finally adjudicated and distribution made in accordance with the residue clause of the will, the executors of said estate filed a proceeding, in accordance with the provisions of law in the Commonwealth of Pennsylvania, to discharge the residuary estate from the payment of said annuity. On November 10, 1939, the Orphans' Court directed the executors to set apart to themselves, as trustees, from the assets of said estate the amount of $150,000 to secure the payment of $2,000 per annum to Elsie Craig Simpson, and then proceed with the administration of said estate in accordance with the residue clause of said will.

On March 13, 1937, within the time required by law, the plaintiffs filed a Fiduciary Return of Income, Form 1041, and an Individual Income Tax Return, Form 1040, for the estate of Pressly T. Craig,

for the period from April 20, 1936 to December 31, 1936.

The Commissioner of Internal Revenue subsequently determined a deficiency in the 1936 income taxes due from the estate of Pressly T. Craig in the amount of $39,114.56, and said amount just mentioned together with interest thereon in the sum of $7,515.35 was paid to the Collector of Internal Revenue on May 28, 1940.

On or about September 12, 1941, within the time required by law, the plaintiffs filed a claim for a refund of the amount paid on May 28, 1940, and said refund claim was rejected in its entirety by the Commissioner of Internal Revenue.

Under the Fourth Paragraph of the decedent's will, it was provided that said legacies were to be paid from the net income of returns and profits of said estate, subject to certain conditions set forth in the Fifth Paragraph of said will. The income for said estate from April 20, 1936 to December 21, 1936, was $142,842.58, and there were paid from said fund certain legacies, which are set forth in the Fourth Paragraph of the will, in the amount of $68,500.

The plaintiffs claimed the amount of $68,500 as a deduction in their income tax return for the decedent's estate on the basis of the provisions of Section 162 of the Revenue Act of 1936. In connection with the settlement of the federal estate tax liability of the decedent's estate, the plaintiffs stipulated and agreed with the Government not to claim as a deduction for income tax purposes $20,000 of said total of $68,500, which were legacies given to certain charitable institutions. On the basis of the adjudication by the Orphans' Court of Allegheny County, Pennsylvania, of the payment of $12,500 to Elsie Craig Simpson, it has been stipulated and agreed between the Government and the plaintiffs that said amount of $12,500 should not be considered in the proceeding now before the Court. In other words, of the amount of $68,500, which was claimed by the plaintiffs as a deduction under the provisions of Section 162 of the Revenue Act of 1936, it has been stipulated and agreed that the amount of the deduction, if allowable, which should be considered by the Court in passing on the issues joined herein, should be confined to the amount of $36,000.

In short, it is claimed that the amount of $36,000 should have been allowed by the Government as a deduction from the computation of the income tax liability of said estate for the year 1936, and on the basis of said deduction being authorized by law the plaintiffs are entitled to a refund from the Government of $22,319.51 with interest in the amount of $4,287.95, or a total of $26,607.46 together with interest thereon from May 28, 1940.

In the first instance it becomes necessary to consider the provisions of the Revenue Act of 1936, which has application to the matter now before the Court.

Section 161 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 892, provides as follows:

"161. Imposition of Tax

"(a) Application of tax. The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

"(1) Income accumulated in trust for the benefit of unborn or unascertained persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

"(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

"(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated."

Section 162 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 893, provides as follows:

"162. Net Income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o) ) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit;

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

"(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary."

■ In determining the application of the Revenue or Tax Act, it is necessary for the Court to judicially interpret the will. In so doing, it is the duty of the Court to ascertain the intention of the testator according to the meaning of the words which have been deduced from a consideration of the whole instrument, and a comparison of its various parts in the light of the situation and circumstances which surrounded the testator, when the instrument was framed. Colton v. Colton, 127 U.S. 300, at page 310, 8 S.Ct. 1164, 32 L.Ed. 138.

In this case the will was executed on March 14, 1933, and the codicil was executed on August 21, 1934. Since it is necessary for the Court to ascertain the intention of the testator from a consideration of the whole instrument, the Court will refer to the will and codicil with completeness.

## "WILL"

"I, Pressly T. Craig, unmarried, a resident of the Borough of Sewickley, Allegheny County, Pennsylvania, do make this my Last Will and Testament, hereby revoking all other Wills heretofore made by me.

"First: I direct that my body be buried in our family burial lot in the Uniondale Cemetery, Pittsburgh, Pennsylvania, and that my obsequies shall be under the exclusive control of my sister Mrs. Matilda S. McCready, if she survive me, and that a marker to be the same as those at the graves of my mother and father now on the lot shall be erected and paid for by my Executors, and I give and bequeath unto my said sister, Mrs. Matilda S. McCready, if she survive me, all of my tangible personal property (not including in this classification certificates of stock or bonds) except certain articles hereinafter specifically disposed of, which at my death may be in her home or in any room which I may be occupying away from her home, or on my person wherever I may be, such as books, clothing, jewelry, furniture and mementos given me by members of my family and friends.

"Second: I give and bequeath to my brother, George L. Craig, my stick pin containing one pearl.

"Third: I give and bequeath to Mrs. Henrietta B. Craig, wife of my brother George L. Craig, my diamond and sapphire stick pin and I direct my Executors to have

the stones contained in said stick pin reset in a ring or other shape if Mrs. Craig so desires.

"Fourth: I give, devise and bequeath to my Executors hereinafter named, all the rest, residue and remainder· of my property of every kind and description and wherever the same may be situate, it being my intention not to die intestate as to any part of my estate; in trust, nevertheless, for the following uses and .purposes and for no other use, purpose or trust whatsoever, viz.: To sell and reduce to cash and to invest, call in and re-invest the same in good and safe securities, not, however, to be confined to what are known as trust investments under the laws of the Commonwealth of Pennsylvania, and with the privilege of retaining any property that I may be possessed of at the time of my death as part of the trust estate, without liability for fluctuations in value, and from the net income, rents and profits thereof to pay, subject to the conditions set forth in paragraph 'Fifth' of this my Will;

"(a) To my sister, Mrs. Matilda S. McCready, each and every year during the full term of her natural life, in quarter-yearly installments, the sum of Eight Thousand ($8,000.) Dollars;

"(b) To Miss Elsie Craig Simpson, each and every year during the full term of her natural life, in quarter-yearly installments the sum of Four Thousand ($4,000.) Dollars;

"(c) To pay to Kathleen Watkins Jenkins, now Mrs. Ralph T. Barr, daughter of my cousin Mrs. Fannie S. Jenkins, now deceased, the sum of Twenty-Five Hundred ($2500.00) Dollars;

"(d) To pay to Margaret Woods Elder of New Castle, Pennsylvania, daughter of my cousin Mrs. James Woods, deceased, the sum of Twenty-Five Hundred ($2500.-00) Dollars, should she survive me;

"(e) To pay to the St. Barnabas Free Home, Gibsonia, Allegheny County, Pennsylvania, the sum of Ten Thousand ($10,-000.) Dollars;

"(f) To pay to each of my grand-nephews and grand-nieces by consanguinity who shall survive me, the sum of One Thousand ($1,000.) Dollars, and in the event that any of my grand-nephews and grand-nieces shall predecease me leaving lawful issue him or her to survive, the said sum of One Thousand Dollars shall be invested by my Executors and paid, together with the income and increase thereof, to such issue on the arrival of the youngest thereof at the age of Twenty-one (21) years. Provided, that should any of my grand-nephews or grand-nieces not be of lawful age at the time of my decease, that the sum herein directed to be paid to him or her continue to be held in trust by my Executors during the minority of such grand-nephew or grand-niece and paid, with all accumulations or additions to the beneficiary upon his or her arrival at full age.

"(g) To pay to The Union Trust Company of Pittsburgh, Pennsylvania, the sum of Ten Thousand ($10,000.00) Dollars, to be held in trust by it and to be invested and re-invested by it perpetually and after all necessary charges shall have been paid out of the income thereof, to pay the net income quarter-annually, if possible, or at such longer period of time as the income shall accrue and be collected by said Trustee, to the Board of Trustees of the Diocese of Pittsburgh, a corporation of the State of Pennsylvania associated with the Protestant Episcopal Church in the United States of America, which Board is hereby appointed Trustee to receive the said net income and at its discretion to use and employ the same in the support and maintenance of Christ Episcopal Church, North Side Pittsburgh, Pennsylvania, which was incorporated in January, 1832, by the Commonwealth of Pennsylvania, under the name 'The Rector, Church Wardens and Vestrymen of Christ Church Allegheny', so long as, in the judgment of the said Board and of the Bishop or Bishops having episcopal jurisdiction over the said Christ Church and of the Standing Committee of the Diocese with which the said Christ Church shall be in union, the said Christ Church is performing its corporate functions as an active and useful branch of the Christian Church; and, if such activity and usefulness shall cease, of which cessation as a fact the Board and the Bishop or Bishops and Standing Committee afore-

said shall be the judges, then and thereafter the said Board as Trustee shall perpetually apply the said net income in Christian Mission Work, first consulting and advising from time to time with the said Bishop or Bishops and Standing Committee as to the appropriate application of such income; this trust is made subject to the provisions of the 'Fourth' paragraph of this Will, and shall be known as the 'Matilda Staunton Craig Memorial Fund', in memory of my mother, Mrs. Matilda Staunton Craig, who was a member of the said Christ Church and whose father, William Staunton, was one of its charter members and Wardens. I hereby direct that the Trustee named in this paragraph, in its investment and reinvestment of said Memorial Fund shall not place more than Five Thousand ($5,-000.) Dollars thereof in any single investment except in the public debt of the United States of America and that the investment of the Memorial Fund shall be kept separate from other funds in the hands or under the control of the Trustee except that amounts not exceeding Two Thousand ($2000.) Dollars may be placed with other funds in one investment in order to keep the principal of the Memorial Fund invested as fully as possible. Provided, however, that the Memorial Fund shall receive its proportionate share of the net income from such joint investment.

"(h) To pay to each of my nieces in law, that is, the wives of my nephews, by consanguinity, who shall survive me, the sum of One Thousand ($1,000.) Dollars.

"(i) To pay to John S. Schweininger, should he survive me and be in my employ at the time of my decease, the sum of Five Thousand ($5,000.) Dollars.

"(j) To pay to Doris J. Doyle, should she survive me, the sum of One Thousand ($1,000.) Dollars.

"(k) To pay to M. Alice Bushman, should she survive me, the sum of One Thousand ($1,000.) Dollars.

"Fifth: I do not contemplate that the rents, income and profits from the trust estate will be sufficient to make all the payments set forth in the 'Fourth' paragraph of this my Will, within the first few years following my death, and all such payments are subject to the condition that if there be not sufficient funds on hand to meet all of the payments aforesaid that they be paid in the order named in said 'Fourth' paragraph, and that all of said payments except the quarter-yearly payments to my sister, Mrs. Matilda S. McCready, and Miss Elsie Craig Simpson shall bear interest at the rate of five per cent (5%) per annum from one year after the date of my death. And, Provided, that my Executors may at any time in their discretion sell any part of the trust estate they desire and make payment with the avails of said sales in order of the schedule in the 'Fourth' paragraph of this my Will.

"Sixth: I direct that my Trustees shall invest separately the sum of Five Thousand ($5,000) Dollars, and keep the same invested, and pay the said Five Thousand Dollars, together with any increase of or interest thereon to the first son named Pressly Taylor Craig, born to any of my nephews, Albert B. Craig, George L. Craig, Jr. or Earle M. Craig, or any son of said nephews, and I give and bequeath the same to such Pressly Taylor Craig, together with the Lange & Sons, manufacturers, gold watch, chain and locket given me by my brother Joseph W. Craig, on my Twenty-first (21st) birthday, July 29, 1891. In the event no son is born and so named to any of my named nephews or theirs sons within twenty-one years of my death, said Five Thousand Dollars, together with all increase and income together with the watch, chain and locket, shall become part of my residuary estate.

"Seventh: I direct that after payment of all estate, inheritance and transfer taxes upon my estate, and every portion thereof, and the payment of debts, expenses of administration, including Executors' commissions and attorneys' fees, and the payment in full of all the sums hereinbefore in paragraph 'Fourth' recited, and setting up the trusts hereinbefore created, my Executors shall divide the rest, residue and remainder of my estate remaining in their hands into Eight (8) equal shares or parts.

"I give, devise and bequeath to each of my nephews, Albert B. Craig, George L.

Craig, Jr., and Earle McKee Craig, and to each of my nieces, Florence Brace Darsie, Margaret L. Weaver and Sarah Craig Ferree, one of such equal shares or parts, and I give, devise and bequeath to the Fidelity Trust Company of Pittsburgh, Pennsylvania, in trust, nevertheless, for the following uses and purposes and for no other use or purpose whatsoever, Two (2) of such equal shares or parts, such two equal shares or parts to be kept in separate investments by my Trustee and the net income, issues and profits from one of such said parts shall be paid to my niece, Gladys Brace Heckert, so long as she shall live, and upon her death the principal shall be paid to her lawful issue; the distribution to said issue to be per stirpes and not per capita; and to pay the net income, issues and profits of one of such parts to my niece, Mary Brace Wilkins, so long as she shall live, and immediately after the death of my niece, Mary Brace Wilkins, to pay the principal of said one equal share or part to her lawful issue, the distribution to said issue to be per stirpes and not per capita. In the event that either or both Gladys Brace Heckert and Mary Brace Wilkins shall die without leaving lawful issue her to survive, the principal of said trust fund created in this paragraph for her benefit shall be paid to my lawful heirs, such heirs to be ascertained as of the date of my death. The Trustee in this paragraph named shall invest, call in and re-invest said Two (2) equal shares or parts and in making such investments shall not be confined to such securities as are known as investments for trust funds in the laws of Pennsylvania.

"Eighth: My Executors are authorized to let and lease for a period of not exceeding Five (5) years and sell and convey, either at public or private sale, all real estate owned by me at the time of my decease (excepting only my interest in burial lots), without liability on the part of the purchaser to look to the application of the purchase money, hereby granting and giving to my Executors full power and authority to convey the same as fully and completely as I could if living.

"Ninth: No device or bequest contained in this Will and no income of or from any such devise or bequest, while in the hands or under the control of my Executors or any Trustees who have been or may be appointed by this Will or by Court to carry out the provisions of this Will, shall be anticipated or subject to assignment or liable for any of the present or future debts, contracts or engagements of any beneficiary of such device or bequest.

"Tenth: My Executors are authorized to distribute in kind, and the Trustees named herein to receive in kind.

"Eleventh: I constitute and appoint my nephews, Albert B. Craig, Earle McKee Craig and George L. Craig, Jr., Executors of this my Last Will and Testament, and Trustees for all trusts herein created or intended so to be wherein a Trustee is not specifically designated; and in the event that all of said nephews shall die, decline, resign or be unwilling to serve, I appoint The Union Trust Company of Pittsburgh, Executor in their place and stead. It is my desire that the settlement of my estate shall not be unduly protracted, but as it consists partly of realty which should not be forced upon the market, I direct that no devisee or legatee shall have the right to compel a sale of any real estate during the term of Ten (10) years immediately succeeding my death.

"Nothing in this Will contained shall be construed as working a conversion of realty into personalty or personalty into realty until such conversion shall be actually consummated.

"In Witness Whereof I have hereunto set my hand and seal this 14th day of March, A.D. 1933.

"(Signed)        Pressly T. Craig   (Seal)

"Signed, sealed, published and declared by Pressly T. Craig, the Testator, as and for his Last Will and Testament in our presence, who have at his request, and in his presence, and in the presence of each other signed our names as witnesses.

"(Signed)        L. M. Plumer

"(Signed)        Ed. B. Scull"

## "CODICIL"

"I, Pressly T. Craig, unmarried, a resident of the Borough of Sewickley, Alle-

gheny County, Pennsylvania, do make and publish this as and for a codicil to my Last Will and Testament dated March 14, 1933.

"Item: I hereby revoke, cancel and make void paragraph marked 'First' of my said Will, and in place and stead thereof I direct that my body be buried in our family burial lot in the Uniondale Cemetery, Pittsburgh, Pennsylvania, and that my obsequies be under the exclusive control of the Executors in my said Will named, and that they erect and pay for a marker to be the same as those at the grave of my father and mother on said lot.

"Item: I give and bequeath to Mrs. Henrietta B. Craig, wife of my brother, George L. Craig, my grandmother's mahogany clock, for and during her natural life and direct that upon her death the same shall go to Henrietta B. Craig, daughter of Albert B. Craig.

"Item: I give and bequeath to Eleanore McKee Craig, widow of my brother Percy L. Craig, my grandmother Craig's sewing cabinet, mirror and upholstered mahogany chair.

"Item: I give and bequeath to my niece, Mrs. Robert B. Ferree, my gold ring with three diamonds set in it, being the ring given me by my mother on my Twenty-first birthday.

"Item: I hereby revoke, cancel and make void, sub-section (b) of paragraph 'Fourth' of my said Will, wherein and whereby my Executors and Trustees are directed to pay Miss Elsie Craig Simpson Four Thousand ($4,000.00) Dollars annually during the full term of her natural life and in lieu, place and stead thereof I will and direct that my Executors and Trustees pay to the said Miss Elsie Craig Simpson each and every year during the full term of her natural life in quarter-yearly installments the sum of Two Thousand ($2,000.00) Dollars and in addition thereto that they pay to her the lump sum of Twelve Thousand Five Hundred ($12,-500.00) Dollars, such payment to be made as soon after my death as conveniently practical.

"Item: I give and bequeath to my brother, George L. Craig, the large pictures of my Mother and my Father.

"Witness my hand seal this 21st day of August A.D. 1934.

"(Signed)                Pressly T. Craig    (Seal)

"Signed, sealed, published and declared by Pressly T. Craig, the Testator, as and for a codicil to his Last Will and Testament in our presence, who have at his request, in his presence, and in the presence of each other signed our names as witnesses.

"(Signed)              Samuel A. Schreiner
"(Signed)               "H. M. Montgomery"

Discussion.

The basic question presented to the Court in this case is whether the legacies or bequests provided in the Fourth Paragraph of said will were to be distributed in the order named out of the net income, rents and profits of said estate, and as a result thereof under the provisions of Section 162(b) of the Revenue Code so that said payments were allowable as a credit to the estate in the computation of the 1936 income tax liability.

It is primarily contended by the plaintiffs that in the settlement and adjudication of said estate by the Orphans' Court of Allegheny County, said Court has determined said legacies or bequests to be payable out of income and that said decision is binding on the Government and the Federal Court. In other words, the representatives of the estate contend that where a state court has interpreted a will and has adjudicated the property rights among parties to a proceeding before it, said interpretation and adjudication are binding on the Federal Government for tax purposes. The Court has meticulously reviewed the complete file in connection with the settlement and administration of said estate, and in connection therewith finds:

1. That no exceptions or objections were filed by any person interested in the administration of said estate in connection with the executors paying the legacies or bequests which are involved in the question now before the Court for consid-

eration, and which are referred to in the Fourth Paragraph of said will.

(2) That the adjudication by the Orphans' Court of the legacy or bequest of $12,500 to Elsie Craig Simpson, in which it was held that under the provision of the Fourth Paragraph of said will and codicil said payment should have been made from the corpus rather than income, it does not in any degree refer to or discuss the legacies or bequests claimed as a deduction by the estate and the matter now before the Court for consideration.

(3) That the Orphans' Court approved the first and partial account, and second and final account, and by so doing it is contended by the plaintiffs that since no exceptions were filed or appeal taken, the adjudication and decree of the Orphans' Court is binding on Federal Government for tax purposes.

■ It is definitely a settled rule of law that except in matters governed by the Federal Constitution or by Acts of Congress, the law that would be applied in any case is the law of the state. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Madden v. Commonwealth of Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383; Mitchell v. Ottinger, 3 Cir., 105 F.2d 334; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

■ It has been accepted as a settled proposition of law that the intention of Congress controls what law, federal or state, is to be applied and that the revenue laws are to be construed in the light of their general purpose to establish a nation-wide scheme of taxation uniform in its application. Their provisions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section makes its application dependent on state law. United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913; Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154.

It is, therefore, necessary that the Court must generally assume that since the ap-

plication of federal legislation is nationwide and that we are dealing with the tax statute, it is primarily necessary to determine the will of Congress since the federal program would be impaired if state law were to govern under all circumstances. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Helvering v. Butterworth, 290 U.S. 365, 369, 54 S.Ct. 221, 78 L.Ed. 365.

■ In dealing with the meaning and application of an act of Congress enacted in the exercise of its plenary power under the Constitution to tax income and to grant exemptions from that tax, Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law. In other words, Congress, without question, intended that the liability to pay income tax under the Revenue Act could not be decided in one way in the case of a settlement of an estate in one state of the Union, and in another way in another state according to the differing views of the state courts. Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410.

The Court has read with considerable interest and thorough study the decisions of our tax courts, appellate courts, and the United States Supreme Court, which hold that where a state court has interpreted a will and has adjudicated property rights in the settlement of an estate, that said interpretation and adjudication determines not only legally but practically the estate and character of the interests taken by the respective legatees, and that such adjudication is binding on the Federal Government for tax purposes. Uterhart v. United States, 240 U.S. 598, 36 S.Ct. 417, 60 L.Ed. 819; First National Bank of Atlanta v. Commissioner, 36 B.T.A. 491, 496; Armstrong v. Commissioner, 38 B.T.A. 658; Eagan v. Commissioner, 5 Cir., 43 F.2d 881, 71 A.L.R. 863; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Estate of Shepherd v. Commissioner, 39 B.T.A. 38; Coursey v. Commissioner, 33 B.T.A. 1068; Adams

v. Commissioner, 44 B.T.A. 408; Mertens Law of Federal Income Taxation, Vol. 6, Paragraph 36.17, page 186; Commissioner of Internal Revenue v. Dean, 10 Cir., 102 F.2d 699; Eisenmenger v. Commissioner of Internal Revenue, 8 Cir., 145 F.2d 103, 156 A.L.R. 741; Frederich et al. v. Commissioner of Internal Revenue, 5 Cir., 145 F.2d 796, 157 A.L.R. 841; Commissioner of Internal Revenue v. Crawford's Estate et al., 3 Cir., 139 F.2d 616; Commissioner of Internal Revenue v. Bishop Trust Co., Ltd., 9 Cir., 136 F.2d 390.

It appears that the main problem in this case is whether the bequests and legacies were to be paid out of income in said estate in all events, or whether the corpus of said estate was responsible for said payment in the event that the income was not sufficient. The Court could be led to no other conclusion than that the confirmation of the accounts by the Orphans' Court of Allegheny County, Pennsylvania, had adjudicated this question and was to be binding on the federal court on the basis of the authorities hereinabove referred to if it were not for a decision in our own Circuit and two decisions of the Supreme Court of the United States which the Court interprets to the contrary. In other words, there appears to have been a falling away in our own Circuit and by the Supreme Court of the United States from the proposition of law which heretofore appears to have been definitely settled in a matter of this nature.

In the case of Thomas Flexible Coupling Co. v. Commissioner of Internal Revenue, 3 Cir., 158 F.2d 828, the plaintiff, a Pennsylvania corporation, engaged in the manufacture and sale of flexible couplings. A woman by the name of Bertha E. Thomas, wife of the President of said company, secured certain patents and assigned them to the company together with any future patents or improvements issued for said flexible couplings, in consideration of which she was to receive certain shares of stock in the company and royalties. Subsequent thereto she secured additional patents or improvements on the original patents and assigned them to the company, and in consideration of which the company agreed to pay her financial remuneration.

The financial remuneration was $3,500 which was paid to her during the years 1939, 1940 and 1941, and the Government contended that said payments were not ordinary and absolutely necessary expenses and, therefore, not deductible from the corporation's gross income. This finding was found by the tax court because it was held that Mrs. Thomas had already promised, by her former agreement, to assign to the company all patents or future improvements and that the company, therefore, was under no legal obligation to make the additional payments to her. After this ruling by the tax court and pending an appeal to the Circuit Court in this Circuit, the corporation filed a petition for declaratory judgment in our state court and evidence was introduced to show that the original contract made by Mrs. Thomas with the company was modified by an oral agreement made subsequent to the original contract when the patents were assigned, wherein the original contract had been cancelled. In other words, the Court of Common Pleas held that the corporation was obligated to make these additional payments to Mrs. Thomas and that the original contract had, therefore, been cancelled, and the company was responsible to make the payments to her which were deducted by the corporation in their income tax return for the years 1939, 1940 and 1941. The decision of the Court of Common Pleas was appealed to the Supreme Court of the Commonwealth of Pennsylvania, and was affirmed by the Supreme Court. Thomas v. Thomas Flexible Coupling Co., 353 Pa. 591, 46 A.2d 212. It was contended by the company in its argument before the Circuit Court that it is necessary for the Court to follow the Pennsylvania law and that since the Supreme Court in the Commonwealth of Pennsylvania had held that the original contract had been cancelled and the company was obligated to make the payments to Mrs. Thomas, the federal court was obligated to recognize said decision.

Our court held in a unanimous decision in the Third Circuit that the decision of the Supreme Court of Pennsylvania could not hamper the effective enforcement of a valid federal tax levied against earned income.

.Furthermore, the Supreme Court of the United States has recently considered the question involved in this proceeding in the cases of Lusthaus v. Commissioner of Internal Revenue, 327 U.S. 293, 66 S.Ct. 539, and Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532. Said cases involved a partnership between a husband and wife, which partnerships were legally effective under the law of the Commonwealth of Pennsylvania in the Lusthaus case and under the law of the State of Michigan in the Tower case. It was argued that since said partnerships would have been valid under the laws of the states of Michigan and Pennsylvania, the tax court should have consequently held said partnerships valid for tax purposes. The Supreme Court held whether the circumstances created a real partnership is not governed by how Michigan or Pennsylvania might treat the same circumstances for purposes of state law. The state court might decide that the circumstances existing in the partnership were sufficient under state law to consider the wife as a duly constituted partner, but the state cannot, by its decisions and laws governing questions over which it has final say, also decide issues of federal tax law and thus hamper the enforcement of a valid federal tax levied against earned income. That by the simple expedient, drawing up papers, single tax earnings cannot be divided into two tax units in order to avoid the payment of sur taxes.

▪ In view of the foregoing decision of the Supreme Court of the United States and in our own Circuit, I believe that the law as formerly enunciated in a long line of decisions by the Supreme Court and the Appellate Court in this Circuit has now been modified in order to achieve absolute uniformity in all of the states of the Union in connection with tax liability created by Revenue Acts enacted by Congress. To hold otherwise, the taxpayer who drew a will in the State of Pennsylvania and died in the State of Ohio where he had established his domicile and residence, if the law in the State of Ohio had been differently interpreted in a case of this nature as compared with the law in the State of Pennsylvania, the Government in the State

of Ohio would be able to maintain their contention that the estate would be liable for the payment of the tax while in the State of Pennsylvania the Government's contention would fall and the estate would not be liable for the payment of the income tax. The Court believes, therefore, and so finds that under the provisions of the Revenue Act of 1936, Section 162, it was definitely the intention of Congress that the provisions of said Act should have application in the same manner in all of the states of the Union, and that the state courts' decisions of questions, over which they have final say, cannot and should not decide issues of federal tax law and thus hamper the effective enforcement of a valid federal tax.

It is, therefore, necessary for the Court to interpret the provisions of the will involved in this case and arrive at the intention of the testator as to whether or not it was intended that the legacies and bequests referred to in the Fourth Paragraph of the will should be paid out of income or be charged to the corpus of said estate. The opinion reached in this respect will finally govern the question as to whether or not the estate was liable for the income tax during the year 1936 as contended by the Government, or if the beneficiaries were liable for the payment of the income tax as contended by the executors of said estate. In other words, the Government contends that the legacies and bequests were a charge on the corpus, and the plaintiffs contend that they were to be paid solely out of the income.

The Court will, therefore, consider the various provisions of the will which have application to the facts at issue since it is fundamental that the answer must be found in the will of Pressly T. Craig, the testator who created the trust. For convenience, the salient provisions of the will bearing upon the point which is for consideration are as follows: "Fourth: I give, devise and bequeath to my Executors hereinafter named, all the rest, residue and remainder of my property of every kind and description and wherever the same may be situate, it being my intention not to die intestate as to any part of my estate; in trust, nevertheless, for the fol-

lowing uses and purposes and for no other use, purpose or trust whatsoever, viz: To sell and reduce to cash and to invest, call in and re-invest the same in good and safe securities, not, however, to be confined to what are known as trust investments under the laws of the Commonwealth of Pennsylvania, and with the privilege of retaining any property that I may be possessed of at the time of my death as part of the trust estate, without liability for fluctuations in value, and from the net income, rents and profits thereof to pay, subject to the conditions set forth in paragraph 'Fifth' of this my Will; * * *."

■ From reading the foregoing provisions just quoted, it is plain that Paragraph Four, standing alone, provided that the bequests and legacies referred to were to be paid from the net income, rents and profits of said estate. It is a definite settled rule of law that where payments to beneficiaries are to be made from income only, such form constitutes an allowable deduction in favor of the estate and the payment of income tax is to be made by the beneficiary or annuitant. Helvering v. Butterworth et al., 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365; Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897; Heiner, Collector of Internal Revenue v. Beatty, 3 Cir., 17 F.2d 743.

The Fourth Paragraph of the will states that the various legacies or bequests to be paid out of the net income, rents and profits were to be subject to the conditions set forth in the Fifth Paragraph, which paragraph provides as follows: "Fifth: I do not contemplate that the rents, income and profits from the trust estate will be sufficient to make all the payments set forth in the 'Fourth' paragraph of this my Will, within the first few years following my death, and all such payments are subject to the condition that if there be not sufficient funds on hand to meet all of the payments aforesaid that they be paid in the order named in said 'Fourth' paragraph, and that all of said payments except the quarter-yearly payments to my sister, Mrs. Matilda S. McCready, and Miss Elsie Craig Simpson shall bear interest at the rate of five per cent (5%) per annum for one year after the date of my death. And, provided, that my Executors may at any time in their discretion sell any part of the trust estate they desire and make payment with the avails of said sales in order of the schedule in the 'Fourth' paragraph of this my Will."

This paragraph of the will confers a discretion upon the executors of said estate to · pay from the corpus of the estate the various legacies or bequests set forth in the Fourth Paragraph.

In the Fifth Paragraph, the testator stated that he did not contemplate that the rents, income and profits from the trust estate would be sufficient to make all of the payments set forth in the Fourth Paragraph of said will within the first few years following his death, and that all such payments were subject to the condition that if there would be insufficient funds on hand to meet all the payments, that they be paid in the order named in said Fourth Paragraph. It is further provided that all of said payments, except the annuity payments to Elsie Craig Simpson and Mrs. Matilda S. McCready, were to bear interest at the rate of 5% per annum beginning one year after the death of said testator.

This estate was of considerable size and in reading the Fourth and Fifth Paragraphs of said will together, it is logical to reason that the discretionary power given to the executors was to cease or become exhausted when sufficient income existed to pay said amounts.

■ It has been accepted as a settled rule of law that where the invasion of the principal or resort to the corpus of a trust estate rests in the sound discretion of the trustees or executors, said payments are, under said circumstances, taxable to the recipient or beneficiary of the trust and not to the estate. Mertens Law of Federal Income Taxation, Vol. 6, Section 36.80, Page 290; Rathbone v. Commissioner of Internal Revenue, 37 B.T.A. 936; Howard et al. v. Commissioner of Internal Revenue, 34 B.T.A. 57; Frankel v. Commissioner of Internal Revenue, 8 Cir., 144 F.2d 1023.

The court, therefore, believes that considering the Fourth and Fifth Paragraphs of the will alone, the discretionary right

given to the executors or trustees to invade the principal or corpus of said estate was not sufficient to create an annuity or absolute requirement to make payment of the amounts referred to since the trustees might in their discretion not care to distribute any portion of the principal.

It is next necessary to consider the Seventh Paragraph of the will and the codicil, which refer directly to the question at issue.

"Seventh: I direct that after payment of all estate, inheritance and transfer taxes upon my estate, and every portion thereof, and the payment of debts, expenses of administration, including Executors' commissions and Attorneys' fees, and the payment in full of all the sums hereinbefore in paragraph 'Fourth' recited, and setting up the trusts hereinbefore created, my Executors shall divide the rest, residue and remainder of my estate remaining in their hands into Eight (8) equal shares or parts. * * *"

The codicil provided: "Item: I hereby revoke, cancel and make void, subsection (b) of Paragraph 'Fourth' of my said Will, wherein and whereby my Executors and Trustees are directed to pay Miss Elsie Craig Simpson Four Thousand ($4,000.00) Dollars annually during the full term of her natural life and in lieu, place and stead thereof I will and direct that my Executors and Trustees pay to the said Miss Elsie Craig Simpson each and every year during the full term of her natural life in quarter-yearly installments the sum of Two Thousand ($2,000.00) Dollars and in addition thereto that they pay to her the lump sum of Twelve thousand five hundred ($12,500.-00) Dollars, such payment to be made as soon after my death as conveniently practical."

It is a well settled principle of law that if the various legacies and bequests together with the annuity to Elsie Craig Simpson were to be paid to the respective parties in all events, said payments would be a charge upon the principal and corpus of said estate. In other words, if said payments are to be made to any of the beneficiaries in any event and are not conditioned upon the existence of sufficient trust income, they are not deductible in comput-

ing the taxable net income of the trust estate. Helvering v. Pardee, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365; Bishop Trust Co. v. Commissioner of Internal Revenue, 9 Cir., 92 F.2d 877; Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534; Bush et al. v. Commissioner of Internal Revenue, 9 Cir., 89 F.2d 596.

At the time the will and the codicil were executed in March of 1933 and August of 1934, the economic conditions in the country were somewhat stagnate, employment was irregular and industrialists were being confined to a very limited scale as far as earnings were concerned. The decedent appreciated this fact and although he owned large blocks of stocks, bonds and investments in various corporate interests from which income or dividends would amount to a substantial amount of money in the event that conditions were normal, those same investments made available only a limited income during the years of depression in which the country was involved. The testator, in realization of these conditions, in the Fifth Paragraph of his will set forth that he contemplated that the rents, incomes and profits of his estate would not be sufficient to make payment of the various bequests and legacies within the first few years subsequent to his death. As a result thereof, it was directed that said payments were to bear interest at the rate of 5% per annum beginning one year after his death. In the Seventh Paragraph of his will, he apparently intended to make positive that said bequests and legacies were to be paid in all events since he stated that after the payment of all estate, inheritance and transfer taxes upon his estate, every portion thereof and the payment of debts, expenses of administration, including executors' commissions and attorneys' fees, and *the payment in full of all the sums hereinbefore in Paragraph Fourth recited* (italics ours), and setting up the trust hereinbefore created, that said executors were to divide the rest, residue and remainder of said estate remaining in their hands into eight equal shares or parts.

The Court does not believe that the testator intended that the residue clause of his

will was to become inoperative, and if the economic conditions in this country had not improved, it would have not been possible for the executors to distribute the holdings of the deceased referred to in the residue clause for many, many years.

■ It, therefore, seems to the Court that there is no escape from the conclusion that said legacies and bequests were a charge on the corpus of said estate, and that the recipients or beneficiaries of the bequests referred to could have compelled the executors to resort to the corpus of the estate if the circumstances had not made possible the payment thereof from the income. Since the Court has found that the intention of the testator was that the payments were to be made in any event, they are not deductible in computing the taxable net income of the trust estate, and the facts, therefore, fall within the decisions of the Supreme Court in the cases of Helvering v. Pardee, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365; Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A. L.R. 1534.

The fact that the payments were made out of income is immaterial. Bush et al. v. Commissioner of Internal Revenue, 9 Cir., 89 F.2d 596; Bishop Trust Co. v. Commissioner of Internal Revenue, 9 Cir., 92 F.2d 877.

The Court, therefore, concludes that all of the legacies, bequests and annuities involved in the proceeding were charges upon the principal or corpus of said estate, and that the determination of the Commissioner was correct that said payments were taxable to the estate.

### Conclusions of Law

1. All of the legacies contained in the Fourth Paragraph of the last will and testament of Pressly T. Craig, deceased, and the legacies to Elsie Craig Simpson contained in the codicil thereto were charges upon the corpus of his estate and were to be paid in any event without regard to the existence or nonexistence of income from the corpus of said estate.

2. The determination of the Commissioner of Internal Revenue that none of said legacies were deductible from gross income in determining the income tax liability of plaintiffs as executors for the year 1936 was in all respects correct.

3. That the deficiency in income taxes assessed by the Commissioner of Internal Revenue against the plaintiffs for the year 1936 was in all respects correct and lawful.

4. That the defendant, United States of America, is entitled to judgment dismissing the complaint.