Estate of William O. Burton, Deceased, John L. Meyer, et al., Executors v. Commissioner.
Estate of William O. Burton v. Commissioner
Docket No. 7528.
United States Tax Court
1947 Tax Ct. Memo LEXIS 219; 6 T.C.M. (CCH) 495; T.C.M. (RIA) 47118; May 6, 1947
*219 Charles Looker, Esq., 11 Broadway, New York 4, N. Y., for the petitioner. Francis X. Gallagher, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: Respondent, under date of January 17, 1945, determined a deficiency in Federal estate tax of petitioners in the amount of $1,028.485.15. By far the greater part of this deficiency arose from respondent's determination that "decedent had a taxable interest in one-half of the remainder of the residuary estate of Max E. Bernheimer, subject to the life estate" of the primary beneficiary, resulting in an addition to the value of the net estate of $2,754,576.47. Deductions of executors' commissions, attorneys' fees and debts of decedent in a total amount of $89,602.06 were disallowed by respondent. Petitioners filed a motion for severance of issues, the purpose of which was to request that a hearing be held herein first on the question of whether there should be included in the decedent's gross estate the remainder interest in one-half the residuary estate of Max E. Bernheimer. This motion was granted and a hearing was held herein upon that issue on December 4, 1946. All of the facts bearing *220 upon that issue were stipulated by the parties and we find them to be as stipulated. We set out herein those facts which are necessary to an understanding of the issue presented. Max E. Bernheimer died on September 24, 1913. His will was admitted to probate in the Surrogate's Court, New York County, New York. He was survived by his widow (now Stella H. Houseman) and two sons, George and William (who later changed their names to Burton). His residuary estate was left in trust for his widow for life, thereafter in trust for his sons until they respectively attained 30, with remainder over to their issue. The pertinent provisions of the will are as follows: * * *
Fifth: - All the rest, residue and remainder of my estate, both real and personal, wheresoever, and whatsoever the same may be, of which I may die seized or possessed, I give, devise and bequeath to my executors hereinafter named, to have and to hold the same in trust nevertheless, to and for the following uses and purposes: - To invest and keep the same invested, to receive the rents, issues and profits thereof, and to pay the net rents, issues and profits so received unto my wife, during the term of her natural *221 life, and upon her death I direct my executors to divide my said residuary estate so held in trust into as many equal parts as will make one for each of my children me surviving (including in the term "children" a posthumous child, if any, of mine), and one for the issue collectively of any deceased child of mine, and as to the share so set apart for the issue collectively of any deceased child of mine, to pay over absolutely to such issue collectively such share, and as to the share so allotted to and set apart for each child of mine I give, devise and bequeath the same to my executors hereinafter named, in trust nevertheless, to and for the following uses and purposes: - To invest and keep the same invested, to receive the rents, issues and profits thereof and to pay the net rents, issues and profits so received unto the child for whom such share shall be so held in trust, until his arrival at the age of thirty years, and then to pay over to him the entire principal of the share so held in trust. During the minority of each child for whom such share shall be so set apart in trust as above provided, I hereby direct that there shall be paid to such child only so much of the net rents, *222 issues and profits as shall be required for his proper support, maintenance and education, and the balance of the net rents, issues and profits shall be accumulated during the minority of such child and paid over to such child upon his arrival at the age of twenty-one years. In the event of the death of any such child before his arrival at the age of thirty years, leaving lawful issue him surviving, then upon his death the share so held in trust for his benefit shall be paid to his issue, for them to have and to hold the same absolutely and forever. In the event of the death of any child of mine before his arrival at the age of thirty years, without leaving him issue surviving, then upon such death I direct my executors to pay the share so allotted and held in trust for such deceased child to my other children then surviving in equal shares, the issue of any deceased child to take the share which the parent would have taken if living. I hereby empower and authorized my said executors hereinafter named, if and whenever in the exercise of their sound discretion they shall deem it wise from time to time to advance and pay over to any child of mine, after its arrival at the age of thirty *223 years, out of the principal of the said residuary estate so held in trust for the benefit of my wife as aforesaid, sums of money not exceeding in the aggregate a total of one hundred thousand dollars to each child. * * *
Decedent's son, George Burton, died without issue on April 26, 1924, having theretofore attained 30 years of age. Decedent's son, William O. Burton, after attaining 30 years of age, died on October 21, 1940. He left one child, Patricia. On July 1, 1942, a son, Wayne William Lonergan, was born to Patricia. On February 1, 1943, Stella S. Housman, Alfred L. Rose, and John L. Meyer, as the trustees of the Max E. Bernheimer Estate, and as executors of William O. Burton, instituted a proceeding in the Surrogate's Court, New York County, for a settlement of their accounts and for a construction of the will. The following questions were raised in the petition for construction: (a) Was the remainder to George Burton contingent upon his surviving the life beneficiary and, if so, did his remainder, upon his death without issue, vest absolutely in his brother William? Similarly, did William's remainder upon his death vest absolutely in his daughter Patricia? (b) *224 Were the remainders to decedent's sons George and William contingent upon their respectively surviving the life beneficiary Stella S. Housman and, if so, will the residuary estate pass, on the death of the life beneficiary, to Patricia B. Lonergan, if she be then living, or, if she be then dead, to her issue then living? (c) Were the remainders of George and William absolutely vested in them and do these remainders now belong to their respective estates, notwithstanding their deaths during the lifetime of the life beneficiary? (d) Will the remainder pass by intestacy on the death of the life beneficiary? The petitioners in that proceeding, as Executors of William O. Burton, submitted to the Surrogate's Court that only the question in (a) above should be answered in the affirmative. In connection with the construction proceeding before the Surrogate's Court citation was served upon the following: Commissioner of Internal Revenue Attorney General of the United States
Collector of Internal Revenue for the Second District of New York United States Attorney at Camden Collector of Internal Revenue for the First District of New Jersey
Phillips Exeter Academy United States *225 Attorney for the Southern District of New York
Lucille Wolfe Burton Patricia B. Lonergan Wayne William Lonergan John Godfrey Saxe, special guardian on behalf of Wayne William Lonergan Joseph T. Higgins, Collector of Internal Revenue for the Third District of New York New York State Tax Commission Attorney General of the State of New York Attorney General of the State of New Jersey. Of those served with citation, the following entered an appearance in the proceeding: Petitioners, by Proskauer, Rose, Goetz & Mendelsohn
The Attorney General of the State of New York John Godfrey Saxe, special guardian for Wayne William Lonergan Patricia B. Lonergan by Alexander and Keenan, Esqs. Lucille Wolfe Burton by Chadbourne, Wallace, Parke and Whiteside. All of the parties thus served with citation received formal notice of argument. Patricia B. Lonergan filed an answer to the petition in the Surrogate's Court in which she submitted that the question stated as (b) in the petition should be answered in the affirmative, or, in the alternative, that the question stated as (c) should be answered in the affirmative. The special guardian for Wayne William Lonergan filed *226 several elaborate memoranda in the proceeding analyzing the various possible constructions, but making no definite recommendation or argument. The attorneys for the petitioners in the State Court proceedings filed a brief upon the questions of construction presented covering twenty-four pages. The attorneys for Patricia B. Lonergan filed a brief covering fifteen pages. By opinion reported at 43 N. Y. Supp. (2d) 756, and by decree entered on August 21, 1943, Surrogate James A. Foley held that the remainder interest of William O. Burton was not vested at the time of his death but, on the contrary, was contingent on his surviving the widow-life beneficiary and was therefore extinguished by his death, and that his estate never had any interest under the will of Max E. Bernheimer. The opinion of Surroga0e Foley covered four typewritten pages, and cited and discussed eleven cases decided by the New York courts upon the problem presented. No appeal was taken by any party from the decree of the Surrogate. Petitioners' first contention is that the decree of the Surrogate's Court is conclusive upon the question whether the remainder interest of decedent, William O. Burton, *227 under the will of his father, Max E. Bernheimer, was contingent upon his surviving his mother. In the alternative, petitioners contend that the Surrogate correctly interpreted the law of New York. Respondent argues to the contrary on both points. Both parties agree that the issue is one involving property rights upon which the law of the State of New York is determinative. In Susan B. Armstrong, 38 B.T.A. 658, it was held that a decree of the Surrogate's Court for the County of New York, State of New York, upon the construction of a will and the administration of testamentary trusts was binding upon this tribunal as to the property rights involved therein. That this represents the general rule can not be questioned. Freuler v. Helvering, 291 U.S. 35; Blair v. Commissioner, 300 U.S. 5; Letts v. Commissioner, 84 Fed. (2d) 760; Eisenmenger v. Commissioner, 145 Fed. (2d) 103; George Balzereit, 46 B.T.A. 959. Respondent does not question this rule, but urges in the instant case that the issue was feigned, that there was no real contest, and that therefore the determination of the Surrogate is not binding *228 upon this Court, citing Leslie H. Green, 7 T.C. 263, and Francis Doll v. Commissioner, 149 Fed. (2d) 239. It is interesting to note that the opinions in the Armstrong case, supra, and the Green case, supra, were both written on behalf of this Court by the same judge. The facts in the Green case which caused us to refuse to apply there the general rule followed in the Armstrong case, were these: In the Green case the state court proceedings were started after the filing of the petition in the Tax Court; they were brought solely because of a determination of the Commissioner of Internal Revenue; there was no real controversy presented in the proceedings; and the decree of the state court was almost a verbatim copy of the prayers for relief contained in the answer. We therefore concluded that the state court proceedings were collusive, and, consequently, not binding upon us as to the question purportedly the subject of judicial determination. In the Doll case, the question was whether a family partnership existed for Federal tax purposes, a question which the Circuit Court held was within the "exclusive province of the Tax Court." See Commissioner v. Tower, 327 U.S. 280, 66 Sup. Ct. 532. *229 In Estate of Mary Clare Milner, 6 T.C. 874, 881, we held that before a state court decree can be binding upon us as to property rights created under state, it must be "entered upon a real controversy regularly submitted for determination." In other words, we adhere to the general rule stated above to the effect that a decree of a state court as to property rights created under state law is binding on us to the extent that state law is pertinent and controlling, but with the proviso that the state court decree must not be, in effect, a pro forma approval of an agreement made by the interested parties in feigned litigation instituted for the purpose of circumventing the imposition of Federal taxes. In the instant case we are persuaded that the decree of Surrogate Foley was "entered upon a real controversy regularly submitted for determination," and that the proceedings in the Surrogate's Court were not feigned or collusive. It is therefore our opinion that the decree of the Surrogate's Court is conclusive of the issue now before us. Petitioners, in their motion for severance, have indicated the probability that other issues presented by the pleadings will be settled *230 by compromise. If such settlement proves impossible, further hearing will be held herein upon motion of either party. If no such motion is filed within sixty days after the entering of this opinion, then Decision will be entered under Rule 50.